**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | |
|---|---|
| Sahil Promotions, Inc, an Illinois corporation | ) |
| | ) |
| | ) |
| Petitioner | ) |
| | ) |
| v. | ) |
| | ) |
| Sunray Entertainment Inc., a foreign corporation incorporated in Toronto, Canada | ) |
| | ) |
| | ) |
| | ) |
| Respondent | ) |

**Petition to Confirm Arbitration Award**

Now Comes the Petitioner Sahil Promotions Inc., an Illinois corporation (Sahil or Petitioner) by and through its attorneys, Paul S. Chawla, Michael W. Tootooian and Oak Brook Legal P.C. requesting this court confirm the arbitration award made on April 1, 2023 against the Respondent, Sunray Entertainment, a foreign corporation located in Toronto, Canada, (Sunray or Respondent) and for reasons states as follows:

1.    The Petitioner moves pursuant to §207 of the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (Convention), 9 U.S.C. §201 *et seq.* for an order confirming an arbitration award (the "Award") issued pursuant to the International Dispute Resolution Procedures of the International Centre for Dispute Resolution (ICDR), a division of the American Arbitration Association, on April 1, 2023 in an arbitration commenced by the Petitioner against the Respondent – ICDR Case Number: 01-20-0014-0906. A true and correct copy of the award is attached as Exhibit A.

**JURISDICTION & VENUE**

2.    The Petitioner is a United States corporation.

3.     The Respondent is a Canadian corporation.

4.     Canada and the United States are signatories to the Convention.

5.     This Petition is governed by the Convention.

6.     This court has original jurisdiction over this Petition pursuant to §203 of the Convention and 28 U.S.C. §1331 which provides federal-question jurisdiction in matters involving an arbitration agreement or arbitral award falling under the Convention as it arises out of a commercial relationship that is not between citizens of the United States.

7.     Venue is proper in this judicial forum pursuant to ¶204 of the Convention and ¶21 of the Local Promoter Agreement (Agreement), attached as Exhibit B, under which the underlying arbitration proceedings were initiated.

## THE PARTIES

8.     The Petitioner is an Illinois corporation with its principal office and place of business at 2605 W. Devon Avenue, Chicago, Illinois 60659.

9.     The Respondent is a foreign corporation incorporated in Toronto, Canada, having its principal and registered offices and place of business at 515 Consumer Road, Unit 701, North York, Ontario, M2J 4Z2 Canada.

## NATURE OF DISPUTE

10.     This matter involves confirmation of an arbitration award [FINAL AWARD], Exhibit A, issued by Arbitrator Georgina Fabian on April 1, 2023 in favor of the Petitioner and against the Respondent.

11.     The arbitration was processed by the American Arbitration Association (AAA) pursuant to arbitration clauses contained in the Agreement between Petitioner and Respondent as set forth in ¶19.3 of the Agreement (Exhibit B).

2

12.     This arbitration was re-assigned from the AAA to the ICDR because the Respondent is a foreign corporation located in Canada.

13.     Pursuant to ¶16 of the Agreement (Exhibit B), a written modification to the Agreement was made on July 8, 2018, attached as Exhibit C.

14.     On or about August 27, 2020, Sahil filed a Demand for Arbitration with the American Arbitration Association regarding a dispute with Sunray pursuant to ¶19.3 of the Local Promoter Agreement (Exhibit B). Sahil's Demand for Arbitration is attached as Exhibit D.

15.     On or about September 25, 2020, Sunray filed its answer and counterclaim with the American Arbitration Association, attached as Exhibit E.

16.     On April 1, 2023, a Final Award (Exhibit A) was entered by Sole Arbitrator, Georgina Fabian, in favor of Sahil and against Sunray with respect to Sahil's Demand for Arbitration (Exhibit D) and against Sunray and in favor of Sahil with respect to Sunray's Counterclaim (Exhibit E).

17.     The Final Award (Exhibit A) found Sahil is entitled to the following compensation/damages:

a.     $250,000.

b.     Pre-judgment interest in the amount of $27,083.84 pursuant to 815 ILCS 205/2.

18.     The Final Award (Exhibit A) also found the administrative fees and expenses of the American Arbitration Association total $3,850.00 along with compensation and expenses of the arbitrator totaling $14,415.00

19.     The Final Award (Exhibit A) entered on April 1, 2023 gave Sunray 30 days from that date to pay Sahil the sums of $250,000 and $27,083.84, which Sunray has not done.

20.    In addition to these amounts, Sahil is also entitled to reimbursement for various arbitration expenses and fees which Sahil had to pay on behalf of Sunray because Sunray refused to pay its share of the AAA arbitration expenses and Arbitrator fees, amounting to $5,320.00.

21.    Attached as Exhibit F is the Financial History of the underlying arbitration proceedings, prepared by the American Arbitration Association, setting forth those fees/expenses paid by Sahil and those payments made by Sahil on behalf of Sunray, who refused to pay its share of the arbitration proceedings forcing Sahil to make these payments in order to continue the arbitration proceedings.

22.    Attached as Exhibit G is the affidavit of Thomas Ventrone, Vice-President of the International Centre for Dispute Resolution, the International Division of the American Arbitration Association (ICDR), attesting to the accuracy of the Financial History attached as Exhibit F and also to his affidavit, including those payments Sahil made on behalf of Sunray who refused to pay its share of the arbitration proceedings, stating Sahil paid an additional $5,320.00 to keep this arbitration proceeding moving forward which were fees the Respondent, Sunray, should have paid but did not.

23.    Sahil is also entitled to post-judgment interest of 9% per annum on the award of $250,000, pursuant to 735 ILCS 5/12-109 and 735 ILCS 5/2-1303, amounting to $61.64 per day starting April 2, 2023.

WHEREFORE, the Petitioner, Sahil Promotions, Inc., an Illinois corporation, requests this court:

a)    confirm the FINAL AWARD made on April 1, 2023, in the amount of $250,000.00 against Respondent Sunray Entertainment, a foreign corporation incorporated in Canada in favor of Petitioner, Sahil Promotions Inc., an Illinois corporation;

b) confirm and award Petitioner $27,083.84 in pre-judgment interest;

c) confirm and award Petitioner reimbursement of arbitration related costs and fees paid by Sahil on behalf of Sunray in the amount of $5,320.00;

d) confirm the Petitioner, Sahil Promotions, is entitled to and awarded post-judgment interest in the amount of $61.64 per day on $250,000 from April 2, 2023 until the above judgment amount has been paid by the Respondent, Sunray Entertainment, pursuant to 735 ILCS 5/12-109 and 735 ILCS 5/2-1303;

e) award the Petitioner its reasonable attorneys' fees associated with this Petition to the extent Respondent opposes this Petition or moves to vacate the FINAL AWARD;

f) award Petitioner its filing fees for this action and any related service of process expenses;

g) set this matter for further status regarding enforcement proceedings of any judgment entered by this Court against Respondent, Sunray Entertainment Inc., a foreign corporation incorporated in Toronto, Canada, and

f) grant such other and further relief as the Court may deem just and proper.

       Respectfully submitted:

       Oak Brook Legal P.C.


       BY: /s/ Michael W. Tootooian
       One of the attorneys for Petitioner, Sahil
       Promotions, Inc., an Illinois corporation

Michael W. Tootooian
Oak Brook Legal P.C.
3908 N. Cass Avenue
Westmont, IL 60559
(630) 325-5557
E-mail: mwtootooian@chawlagroup.com
Attorney for Petitioner, Sahil Promotions, Inc., an Illinois corporation

ICDR CASE 01-20-0014-0906

## INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION

### SAHIL PROMOTIONS, INC.                     Claimant

-vs.-

### SUNRAY ENTERTAINMENT, INC.

Respondent

---

## FINAL AWARD

---

**Sole Arbitrator**
**Georgina Fabian**

**Counsel for Claimant**
**T. Paul S. Chawla**
**Michael Tootooian**
**Oak Brook Legal PC**
3908 North Cass Ave.
Westmont, IL 60559
USA

**Counsel for Respondent**
**Micheal Simaan**
**Kramer Simaan Dhillon LLP**
120 Adelaide Street West
Ste. 2100
Toronto, ON
M5H1T1
Canada

# Exhibit A

I, THE UNDERSIGNED ARBITRATOR,[1] having been designated in accordance with: (i) Section 19.3 of the Promoter Agreement entered into on April 20, 2018; (ii) the parties' consent to arbitration, as contained in the Demand for Arbitration filed by Sahil Promotions, Inc. dated August 7, 2020 as amended on August 17, 2020; (iii) the Answering Statement filed by Sunray Entertainment, Inc. dated September 25, 2020; and (iv) the parties' confirmation of their consent provided during the Preparatory Conferences that took place on January 27, 2021 and February 3, 2021, having duly heard the proofs and allegation of the parties, do hereby, AWARD, as follows:

## CHAPTER I. THE PARTIES, THE JURISDICTION OF THE ARBITRAL TRIBUNAL, AND THE APPLICABLE LAW

### Section I. The Parties

1. The parties to this arbitration are:

    Claimant: Sahil Promotions, Inc., having its principal office at 2605 W. Devon Avenue, Chicago, IL 60659, United States of America.

    assisted and represented in this arbitration by T. Paul S. Chawla and Michael Tootooian, Oak Brook Legal PC, 3908 North Cass Ave., Westmont, IL 60559, United States of America.

    Respondent: Sunray Entertainment, Inc., having its principal office at 515 Consumer Road, Unit 701, North York, ON M2J 4Z2, Canada.

    assisted and represented in this arbitration by Micheal Simaan, Kramer Simaan Dhillon LLP, 120 Adelaide Street West, Ste. 2100, Toronto, ON M5H 1T1, Canada.

### Section II. The Jurisdiction of the Arbitral Tribunal

2. As explained in more detail in paragraphs 6 to 8, and 57 of the Tribunal's Award on Preliminary Matter issued on June 30, 2022, incorporated as though fully set forth herein, this Tribunal has jurisdiction to hear this dispute.

### Section III. The Applicable Law

3. The Promoter Agreement is subject to Illinois law.[2] However, as explained in more detail in paragraphs 24 to 31 of the Award on Preliminary Matter, incorporated as though fully set forth herein, applying Illinois choice-of-law principles, this Tribunal will apply Canadian law

---

[1] Unless otherwise indicated, the Tribunal refers to all parties, underlying agreements and briefs using the same nomenclature as in the Award on Preliminary Matter.
[2] Promoter Agreement, Section 21.

to those issues pertaining to the tax obligations of the parties under the Promoter and the Handwritten Agreement.

## CHAPTER II. THE ARBITRAL PROCEEDINGS

4. On August 7, 2020, Sahil submitted its Demand for Arbitration, claiming $250,000.00[3] in principal. This Demand was amended on August 17, 2020.

5. On September 25, 2020, Sunray filed its Answering Statement and counterclaimed $150,000.00 against Sahil.

6. Two preparatory conferences took place on January 27 and February 3, 2021.[4]

7. At the parties' request, this arbitration was stayed from February 9, 2021, until January 6, 2022.[5]

8. On January 6, 2022, the proceedings were bifurcated so that the parties could address their arguments pertaining to whether Sunray could justifiably withhold the Fourth Installment.[6]

9. On February 7, 2022, Sahil submitted its Preliminary Memorial. On March 7, 2022, Sunray submitted its Response to the Preliminary Memorial.

10. On June 30, 2022, this Tribunal issued the Award on Preliminary Matter, which was modified *nun pro tunc* on August 8, 2022, to correct a typographical error with respect to paragraph 51 to note Sunray's obligation pursuant to the Handwritten Agreement to pay the Fourth Installment as soon as it received the withholding tax papers for the performers per the terms of the Promoter Agreement.

11. A Preparatory Conference was held on August 4, 2022. At the Preparatory Conference, the parties agreed upon the procedural calendar for the merits of the proceedings. Said calendar was memorialized in Procedural Order No. 5.[7]

12. On August 29, 2022, at Sahil's request and with Sunray's consent, the procedural timetable was modified.[8]

---

[3] Unless otherwise stated, amounts are stated in US dollars.
[4] Procedural Order No. 1, January 27, 2021; Procedural Order No. 2, February 9, 2022.
[5] Procedural Order No. 2, February 9, 2022; Procedural Order No. 3, August 30, 2021; Procedural Order No. 4, January 6, 2022.
[6] Procedural Order No. 4, January 6, 2022.
[7] Procedural Order No. 5, August 9, 2022.
[8] Procedural Order No. 6, August 29, 2022.

13. On October 3, 2022, Sahil submitted its Memorial on the Merits ("Memorial on the Merits.") Sunray, however, did not file a Response Memorial on the Merits ("Response Memorial on the Merits.")[9]

14. On December 12, 2022, a conference call was held to address any issues involving the need for requests for production of documents or depositions, as well as the need for a hearing on the merits. Due to the fact that counsel for Sunray did not attend, the conference was rescheduled to December 16, 2022.

15. On December 16, 2022, the rescheduled call took place, with counsel for Sahil being the only party in attendance. During the call, counsel for Claimant stated that Sahil had no need for discovery and would not request a hearing on the merits. The Tribunal sent an email confirmation to the parties that same day and provided Sunray an opportunity to provide its position no later than December 21, 2022. Sunray did not provide its position on December 21, 2022, or at any time thereafter.

16. These proceedings were closed on March 3, 2023.[10]

## CHAPTER III. THE CLAIMS ON THE MERITS

17. Via a letter dated August 16, 2018,[11] Sahil demanded payment from Sunray of $250,000.00, corresponding to the Fourth Installment provided for in Section 4.5 of the Promoter Agreement executed between the parties on April 20, 2018.[12]

18. The pertinent part of the Handwritten Agreement executed at 11.45 pm on July 8, 2018, the day of the Event, reads as follows:

"It is agreed that the promoters (signed below) owe Sahil Promotions Inc. USD $250,000.00 (USD TWO HUNDRED & FIFTY THOUSAND DOLLARS). This amount is the balance owed & will be paid immediately by the Promoters upon receipt of Canadian withholding tax papers for performers listed in the original agreement. This is full & final settlement & no other discounts/etc. are agreed upon. Original contract remains in force."

19. In its Demand for Arbitration, Sahil requests the Tribunal to determine that Sunray owes Sahil $250,000.00 and resolve the following issues as outlined in its letter of September 21, 2018 (which was not attached to the Demand for Arbitration):

---

[9] Counsel for Sunray confirmed in its email to the Tribunal of December 8, 2022, that: "There was no response sent on or before November 14, 2022."

[10] Procedural Order No. 7, March 3, 2023 and *nun pro tunc* Order of March 10, 2023.

[11] Sunray's Response, page 1.

[12] Demand for Arbitration, AAA Arbitration Dispute Issues, pp. 1-2; Promoter Agreement, Section 4.5.

4

"1. Sunray has withheld funds that are necessary to making the final payment due for applicable taxes.

2. Salman Khan is one of eight entertainers at the show. Mr. Khan performed as per the contract. Sahil further delivered and met is contractual obligations.

3. Salman Khan is not restricted from meeting handicapped children. "Being Human" is Mr. Khan's brand in which he donates profits to not for profits. Mr. Khan's desire to embrace the needs of the Indian community, especially those less fortunate did not have a negative impact on a highly promoted and successful show conducted by Sunray. There are no specific references in the contract preventing Mr. Khan from making public appearances on or about the event date in the Toronto area.

4. Toronto vs. Hamilton, Canada: Do you really wish to discuss such a fallacious allegation as to marketing this show? Frankly, it is likely that if the show only promoted Hamilton, your turnout may have been substantially less. Please quantify your allegations with substance and I will discuss with my client. In addition, your client's substantial marketing budget dwarfed Sahil's.

5. Photo-Op: Sahil accommodated all the prepaid clicks required pursuant to contract. The entertainers' security detail and team attempted to best manage passionate fans as best as possible under the circumstances. The session lasted approximately 30 minutes and thereafter this photo session was completed in compliance with the contract.

6. As to any contention of outstanding invoices from hotels, detailed breakdowns for each room have been requested but never provided which Sunray was obligated to provide in the first instance for the entertainers consistent with Sunray's contractual obligations.

7. Sahil Ticket Allocations: Sunray presold at a premium seats Sunray was contractually obligated to be given to Sahil. Instead Sunray provided Sahil with substitute tickets that were substantially inferior and non-preferential seating tickets scattered in the arena. The offset offered by Sunray is rejected.[13]

20. In its Memorial on the Merits, however, Sahil focuses only on the dispute pertaining to the payment of the Fourth Installment, and states that this Tribunal need only decide the date in which the Fourth Installment payment is due.[14] Sahil also reiterates the request it made in its Memorial on the Preliminary Matter that Sunray be ordered to pay prejudgment interest

---

[13] Demand for Arbitration, AAA Arbitration Dispute Issues, pp. 1-2.
[14] Memorial on the Merits, ¶ 8.

5

pursuant to Illinois statute 815 ILCS 205/2.[15]  Sahil makes no other arguments nor submits any witness statements or other evidence to address the rest of its claims.

21. In its Counterclaim, Sunray counterclaims a right of set-off of $150,000.00 relating against any amounts due and owing as part of the Fourth Installment, relating to Sahil's alleged breach of the Promoter Agreement, based on the following allegations: (1) Salman Khan's Attendance at the "Being Human" event; (2) Sahil's failure to properly promote the Event; (3) Sahil's failure to deliver the "Photo-Op" agreed to as part of the Event; (4) Improper hotel charges charged to Sunray; and (5) Sahil's non-payment for tickets provided by Sunray to the Event.[16]  Sahil did not submit a Response Memorial on the Merits.

## CHAPTER IV. KEY UNDISPUTED FACTS

22. The Tribunal fully incorporates herein the key undisputed facts as stated in paragraphs 20 to 23 of the Award on Preliminary Matter, and more specifically paragraph 22.5, which transcribes Section 4.8 of the Promoter Agreement as follows:

Section 4.8. "Sahil Promotions agrees and acknowledges that, notwithstanding anything else contained in this agreement, **the Local Promoter shall not be required to pay the final Installment of the Purchase Price until it has first received from Sahil Promotions satisfactory evidence that Sahil Promotions has paid all applicable taxes required to be covered by any possible withholding tax amount for any Artists or performers which the Local Promoter would otherwise be required to retain arising from this Agreement,** and Sahil Promotions further agrees and acknowledges that the failure by the Local Promoter to pay the final Installment in full, in accordance with this Section 4.1 will not affect the satisfaction by the Local Promoter of its obligation to pay the Purchase Price in full, and upon receipt of the amount of final Installment so reduced, the Purchase Price shall be deemed paid in full, provided however that Local Promoter agrees to release any such amount retained upon subsequent receipt of the satisfactory evidence of payment of such taxes by Sahil Promotions." (emphasis added.)

23. Pursuant to the Handwritten Agreement, the Fourth Installment is due immediately by the Promoters upon receipt of Canadian withholding tax papers for performers listed in the Promoters Agreement.

24. Sunray made the first three installment payments of $300,000.00, $200,000.00, and $200,000.00 set forth in the Promoter Agreement.[17]

## CHAPTER V. THE POSITIONS OF THE PARTIES

---

[15] Memorial on the Merits. ¶WHEREFORE Section; Memorial on the Preliminary Matter, WHEREFORE Section.
[16] Sunray's Counterclaim.
[17] Memorial on the Merits, ¶ 8.

25. The Tribunal fully incorporates herein the positions of the parties with respect to their obligations relating to the payroll taxes of artists or performers as stated in paragraphs 32 to 44 of the Award on Preliminary Matter.

26. Sahil states that the dispute over the Payment of the Fourth Installment hinges on when the Fourth Installment is due.[18]

27. Sahil claims prejudgment interest pursuant to 815 ILCS 205/2.[19] Although Sahil argues that the starting point for the accrual of prejudgment interest should be June 15, 2018, as set forth in Section 4.5 of the Promoter Agreement, it also states that Sahil will agree to accept January 31, 2021, as the start date of such accrual.[20] Sunray did not contest Sahil's allegations in this regard.[21]

28. Sahil's Memorial on the Merits did not address the issues identified in Numerals 2 to 7 of its Demand for Arbitration and specifically identified in paragraph 19 herein.

29. At no point in time did Sunray submit any witness statements in support of its counterclaims and alleged right to set-off of $150,000.00. Although Sunray included as an exhibit to its Counterclaim a copy of two invoices, arguing that "Sunray was forced to improperly incur the costs of two invoices from the Four Seasons Hotel... totaling $14,535.13,"[22] no other witness statements or evidence proving how the invoices are not Sunray's responsibility were included.

## CHAPTER VI. THE DETERMINATIONS OF THE TRIBUNAL

30. On June 30, 2022, this Tribunal determined that Sahil complied with its payroll withholding tax obligations under the Promoter and Handwritten Agreement. Specifically, at paragraphs 54 and 55 of the Award on Preliminary Matter, the Tribunal stated:

"Based on the evidence presented in Ms. Benny's affidavit identifying Sahil's Canadian tax filings, **the Tribunal finds that Sunray had no payroll tax obligations arising from monies paid to any artist or performer. Instead, the liability for withholding any amounts arising from these payments fell on Sahil.** As a result, and taking into consideration that there is no trigger for any indemnification provisions arising from Sahil to Sunray for this concept, **this Tribunal finds that Sahil's obligation, as shown by the language "upon receipt of Canadian withholding tax papers for performers listed in the original agreement" shall be interpreted as Sahil's obligation to show satisfactory evidence of payment of its payroll taxes as long as the withholding tax**

---
[18] *Ibid.*
[19] Memorial on the Merits, ¶ 13.
[20] *Id.*, ¶ 15.
[21] As stated in paragraph 13 herein, Sunray did not submit a Response Memorial on the Merits.
[22] Sunray Counterclaim, Schedule "A".

7

**obligations pertaining to such tax belonged to Sunray**.

**Because Sunray is not required to withhold payroll taxes for any artists o[r] performers under applicable Canadian tax law, this Tribunal considers that Sahil's 2021 Amended Filings before the CRA** showing that, upon their approval, Sahil is entitled to a payroll credit of 71,597 CAD and a refund for the excess credit – 11,177 CAD from the CRA, **constitute satisfactory evidence of Sahil's compliance with its payroll withholding obligations under the Promoter and the Handwritten Agreement, as they constitute satisfactory evidence that Sunray has no payroll tax liability. As a result, under Section 4.8 of the Promoter Agreement, there is no need for Sahil to wait until the CRA approves its Amended Filings in order to trigger Sunray's obligation to pay the Fourth Installment and filing of evidence proving that Sunray has no payroll tax liability under the Promoter Agreement is sufficient to trigger Sunray's payment obligation.**" (emphasis added.)

31. The Tribunal fully incorporates herein the statements contained in paragraphs 45 to 56 of the Award on Preliminary Matter.

32. Based on the uncontradicted testimony of Ms. Nadine Benny, a tax advisor specializing in Canadian tax law applicable to non-residents providing services in the arts and entertainment sectors, there is no evidence that the CRA has a reason not to approve the Amended Filings. Said approval would entitle Sahil to a refund for the excess credit from the CRA.[23]

33. Based on the above, this Tribunal finds that Sunray must make payment of the Fourth Installment to Sahil without any further delay and without the need to receive notice of the approval of the Amended Filings or any other demand for payment from Sahil.

34. The Tribunal finds that application of 815 ILCS 205/2 to the calculation of prejudgment interest is appropriate due to the governing law provision contained in Section 21 of the Promoter Agreement and the venue of the place of arbitration being Chicago, Illinois pursuant to Section 19.3 of the Promoter Agreement. Moreover, the Tribunal accepts Sahil's proposition that the accrual of prejudgment interest on the Fourth Installment payment of $250,000.00 runs from January 31, 2021.

FOR THE FOREGOING REASONS, THIS TRIBUNAL AWARDS as follows:

1. The claim of Sahil Promotions Inc. against Sunray Entertainment Inc. for payment of $250,000.00 is GRANTED.

2. Within thirty (30) days from the date of transmittal of this Final Award to the parties, Sunray Entertainment, Inc. shall pay to Sahil Promotions, Inc. the sum of $250,000.00;

---

[23] Benny Affidavit at ¶ 38; see Award on Preliminary Matter, ¶ 39.

8

3. Within thirty (30) days from the date of transmittal of this Final Award to the parties, Sunray Entertainment, Inc. shall pay to Sahil Promotions, Inc. the sum of $27,083.84 (791 days from January 31, 2021 to April 1, 2023 at $34.24 daily) in prejudgment interest, pursuant to 815 ILCS 205/2.

4. The counterclaim of Sunray Entertainment Inc. is hereby DISMISSED.

5. The administrative fees and expenses of the American Arbitration Association totaling $3,850.00 shall be borne as incurred, and the compensation and expenses of the arbitrator totaling $14,415.00 shall be borne as incurred.

I, Georgina Fabian, hereby certify that, for the purposes of Article I of the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards, this Final Award was made in Chicago, Illinois, United States of America.

Date: April 1, 2023

Georgina Fabian, Esq.
Arbitrator

STATE OF ILLINOIS)
                 )
COUNTY OF COOK )

I, Georgina Fabian, do hereby affirm upon my oath as Arbitrator and that I am the individual described in and who executed this instrument, which is the Final Award.

Date: April 3, 2023

Georgina Fabian, Esq.

BETTY THEODOROPOULOS
Official Seal
Notary Public - State of Illinois
My Commission Expires Sep 25, 2024

Betty
Notary Public

9

## Local Promoter Agreement

This **Local Promoter Agreement** ("Agreement") entered at Toronto on this 20th day of April 2018 ("Effective Date").

**BETWEEN**

**Sahil Promotions Inc.,** a company incorporated in Illinois and having its registered office at 2605 W. Devon Avenue, Chicago, Illinois 60659 (hereinafter referred to as "Sahil Promotions" which expression shall include its successors, liquidators and permitted assigns and any of its group companies incorporated in India or in any other place);

**AND**

**Sunray Entertainment Inc.,** a company incorporated in Toronto, Canada and having its registered office at 515 Consumer Road, Unit 701, North York, Ontario, M2J 4Z2 Canada (hereinafter referred to as the "Local Promoter" which expression shall include its successors, liquidators and permitted assigns)

## RECITALS

A. Sahil Promotions is a professional event management company.

B. Sahil Promotions has conceptualized a live show / concert titled "Da Bangg Tour 2018". The live show / concert will feature live performances by leading Indian film stars including Salman Khan, Katrina Kaif, Jacqueline Fernandaz, Sonakshi Sinha, PrabhuDeva, Daisy Shah, Manish Paul, and Guru Randhawa. The live show / concert will take place in United States of America and Canada as a part of the world tour during 2018.

C. Sahil Promotions has represented that all intellectual property rights in respect of the brand "Da Bangg Tour 2018" and merchandise products under the said brand and all other related and connected products/events, etc. are vested with it.

D. Sahil Promotions will hold multiple live shows of Da Bangg Tour 2018 in North America in 2018, including various cities in the United States of America and Canada.

E. The shows will be held in the United States of America and Canada during June/July 2018.

F. The Local Promoter has agreed to underwrite and execute a show in Hamilton, Ontario, Canada (hereinafter collectively referred to as the "Event") on July 8, 2018 and become the Local Promoter for the Event.

G. This Agreement including the Exhibits attached hereto specifies various rights and benefits available to the parties hereto and the responsibilities of both the parties. The Exhibits and these Recitals form an integral part of this Agreement and shall be construed accordingly.

# Exhibit B

H.  The parties now wish to record the terms and conditions upon which the Agreement shall exist.

**NOW IT IS AGREED as follows:**

**1.  Scope of this Agreement**

1.1  In consideration of the covenants on the part of the Local Promoter to be observed and performed and the payment to be made by the Local Promoter of the amounts herein specified, Sahil Promotions hereby appoints the Local Promoter as such to execute the Event. The Event will be held in Hamilton, Ontario, Canada as specified herein. The obligations of the Local Promoter in pursuance of its appointment as such would include provision of certain services and facilities for the Event and payment of the Consideration as per the terms and conditions contained in this Agreement. Sahil Promotions further agrees to provide certain rights and benefits to the Local Promoter as per the terms and conditions contained in this Agreement.

**2.  Rights and Benefits of the Local Promoter**

2.1  In view of the Local Promoter agreeing to executing the Event, payment of the Purchase Price and providing certain facilities and services, etc. in terms of this Agreement, Sahil Promotions will permit the Local Promoter to use, as and by way of a limited license, the copyrights belonging to Sahil Promotions, as set out in detail in **Exhibit A** to this Agreement.

2.2  Sahil Promotions shall design the Event and provide the performers and props (other than as set forth in **Exhibit C**) and intellectual property required to legally conduct the Event and any and all ancillary activities (including specifically any sale of branded merchandise containing intellectual property), without infringing on the rights of any third-party.  The Event shall be of world class caliber, as described in the recitals to this Agreement.

2.3  The rights and benefits so provided by Sahil Promotions to the Local Promoter shall be subject to following terms and conditions:

a)  It is mutually agreed by the parties hereto that the Local Promoter is only entitled to exercise the rights expressly granted by Sahil Promotions as per the terms of this Agreement. All other rights that are not specifically granted to the Local Promoter under this Agreement shall always be owned and exploited by Sahil Promotions at its sole discretion.

However, in the case that Local Promoter desires to obtain any additional rights and benefits, it will approach Sahil Promotions and the parties hereto will arrive at mutually agreed terms and conditions for such additional rights and benefits, including agreeing on the manner of sharing additional revenues arising from the exploitation of such rights and benefits.

2

b) The designs and prints of all publicity and promotional material and all video, audio and internet advertisement software and public relations related activity plans including but not limited to press releases and conferences shall be released, executed and exposed to the public or any member of press only after seeking the prior written consent of Sahil Promotions, which shall be provided by Sahil Promotions within 48 hours from the receipt. This section shall apply to all publicity and promotional material, advertisement and PR related activity plans of the Local Promoter.

c) Sahil Promotions shall be permitted to set up advertisements, sponsorship booths, or banners relating to Sahil Promotions and future shows and events at the Event. The Local Promoter shall not object to any such displays, booths or banners. No audio or video recordings will be allowed, except by Sahil Promotions or Sahil Promotions' designee (provided the venue allows such recording). The Local Promoter shall not tamper with the graphics (print and media) provided by Sahil Promotions.

d) It has been mutually agreed by the parties that Sahil Promotions shall be displayed on all creatives including but not limited to artwork, posters, banners, audio advertisements, video advertisements, promotions, press conferences and stage acknowledgements.

e) The Local Promoter agrees that all the guidelines given in this regard by Sahil Promotions as defined in **Exhibit B** to this Agreement will be strictly adhered to by the Local Promoter.

f) The Local Promoter does not commit any material breach of the terms and conditions of this Agreement and fulfills all its obligations and responsibilities in full in the manner specified in this Agreement.

## 3. Responsibilities of the Local Promoter

3.1    The Local Promoter hereby acknowledges and agrees to:

a) Underwrite the Event and pay the Purchase Price as mentioned herein;
b) Become a Local promoter and execute the Event in the manner as mentioned herein;
c) Provide other services and facilities as mentioned herein for the Event;
d) Except as otherwise provided in this agreement be solely responsible for all statutory and legal compliances and payments arising from its obligations pursuant to this agreement;
e) All publicity, advertisements and sales promotions to market and promote the Event locally;
f) All rental costs of the venue and the venue shall be air conditioned; and
g) Appropriate security for crowd and noise control before, during and after the Event.

3.2    The Local Promoter hereby acknowledges and agrees to execute the Event in Hamilton, Ontario, Canada on July 8, 2018 as specified herein at the time to be decided jointly by

3

Sahil Promotions and the Local Promoter and upon the terms of this Agreement and the Recitals and Exhibits.

3.3    Upon execution of this Agreement, the Local Promoter shall provide to Sahil Promotions a Venue Confirmation Letter. The Local Promoter will provide Sahil Promotions with details of the venue and capacities that are booked and contracted for the Event as specified herein as determined pursuant to Section 3.2, above.

3.4    The Local Promoter will make arrangements, bear, and pay for all costs and expenses for executing the Event pursuant to Section 3.1 and 3.2. An indicative list of such arrangements, facilities, costs and expenses, etc. to be made and incurred for executing this Event is provided in the Facilities, Services and Technical Rider as **Exhibit C** to this Agreement. For avoidance of doubts, the Local Promoter agrees to deliver and arrange all requirements, bear and incur all necessary costs and expenses without any limitation ensuring reasonably smooth promotion, staging and execution of this Event, irrespective of whether these are listed herein this Agreement. The Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such costs, losses, damages, liability, etc. caused due to breach of this section, without any limitation.

3.5    It is expressly agreed by the Local Promoter that the timely and adequate delivery and provision of such arrangements in the manner specified in the Facilities, Services and Technical Rider in **Exhibit C** are essential to the execution of the Event by Sahil Promotions and essence of this Agreement. Any breach of this section shall be considered a material breach of terms of this Agreement by the Local Promoter and notwithstanding anything contained in this Agreement, Sahil Promotions shall have right to terminate this Agreement without any notice and, in such cases, the notice period specified in Section 9 shall not apply to such breach.

3.6    Sahil Promotions shall have the right to appoint a team of technical experts as Pre-production Team for verification of venue, services, productions facilities and equipment, etc., to ensure that these are as per the Facilities, Services and Technical Rider specified in **Exhibit C.** The Pre-production team of 4-5 people from India will arrive in the city of performance on or before April 30, 2018 for meetings regarding the technical rider, hospitality, venue, security arrangements, and transport. Their main objective is to ensure that all guidelines to the rider and other arrangements are satisfactory. The Local Promoter will provide one (1) night accommodation for the Pre-production team, which shall consist of 4-5 rooms. Further, the Local Promoter shall also provide direct access to Sahil Promotions to all the local production companies and agencies handling production for the Event and Sahil Promotions shall have right to hold meetings and discussions directly with such production companies for any changes or modifications in the requirements in consultation with the Local Promoter. However, decision of Sahil Promotions shall be final and binding on the Local Promoter, provided however that if Sahil Promotions is not satisfied with Venue it may terminate this agreement by notifying the Local Promoter of such no later than May 7th, 2018 and shall immediately refund the Purchase Price to the Local Promoter and thereafter neither party shall have any further obligation to the other.

3.7    The Local Promoter shall provide the names of no more than 20 people that will be allowed back stage. The back stage and entry to back stage will be under Sahil Promotions' (or designee of Sahil Promotions) control.

3.8    The Local Promoter will be allowed up to 75 people (group of 4-5) to take pictures with the Performers and Group at the end of the Event not to exceed 50 clicks. A room must be arranged backstage for pictures with Promoters, Sponsors & VIP Guests as there will be no meet and greet for the Event. Local Promoter agrees that this shall be a "photo op," and acknowledges and agrees to not advertise or refer to such "photo op" as a "meet and greet." The Local Promoter will not sell any additional tickets for any photographs. There will be no personal cameras or selfies permitted. The Local Promoter will arrange for a single professional photographer to take all pictures. The entire process must be well organized and conducted in a professional manner to ensure a smooth photo session. Any intoxicated individual will be denied entry to photograph room and will not be allowed photographs of any kind with the Performers and Group. Sahil Promotions will not be liable if Local Promoter violates any of the provisions of this Section 3.8.

3.9    Any change or modification as to the quality and timings of requirements as specified in the Facilities, Services and Technical Rider shall not be permitted unless, agreed to by Sahil Promotions in writing. Sahil Promotions, while allowing and agreeing for such changes shall have right to impose such terms and conditions as it may deem necessary and as are reasonable in the circumstances.

3.10   It is agreed that any change or modification to the original content of the Event, as agreed under this Agreement will be made on the sole discretion of Sahil Promotions. However, Sahil Promotions shall make such modification after mutual discussion with the Local Promoter. Any such change will be valid only once it is expressly agreed upon in writing by both the parties, including without limitation any substitution of name talent as described in recitals. For the avoidance of doubt, no change may be made to the details of the performers who will perform at the Event without the prior written agreement of the Local Promoter.

3.11   The Local Promoter represents and warrants that it has or it shall, at its own cost and expense, arrange for obtaining all relevant permissions, approvals, licenses, etc., required for ensuring smooth execution of the Event. No later than 14 days from the date of execution of this Agreement by both parties the Local Promoter will provide a complete list of permissions, approvals, licenses, etc. required from the authorities and time frame within which these will be obtained by them. Sahil Promotions shall not be liable for any non-compliance of obtaining these permissions by the Local Promoter and the Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such costs, losses, damages, liability, etc. incurred due to breach of this clause, without any limitation.

3.12   Each of Sahil Promotions and the Local Promoter shall be responsible for their proper filing and payment of their own taxes. Notwithstanding the foregoing or anything herein, the parties agree that with the exception of the fees referred to in Section 4.2 the Local

Promoter shall not be responsible for any taxes or fees of the Artists and performers, Event crew or staff or any such other persons engaged or delivered by Sahil Promotions.

3.13   The Local Promoter agrees to use its reasonable efforts to assist Sahil Promotions and the performers in completing all legal procedures and formalities in respect to income tax payable on the performers' performance fees payable to the performers by Sahil Promotions, provided however that the Local Promoter shall not be required to incur any cost of any nature in providing such assistance.

3.14   It is agreed by the Local Promoter that only Sahil Promotions has the final right to announce the Event to the public. Until such time, the Local Promoter shall not announce the Event or its association with the Event or publicize or divulge any information about the Event to the media and public, excluding the production and services suppliers. However, the Local Promoter shall require all production / service suppliers to sign a Non-Disclosure Agreement in a form and substance to be mutually agreed upon, and the Local Promoter shall be solely responsible for any breach that may occur by the production / service suppliers. The Event will be announced jointly with Sahil Promotions only subsequent to fulfillment of obligations by the Local Promoter in terms of timely payment of the Purchase Price, as mentioned in Section 5 of this Agreement, and confirming all the arrangements/requirements specified in the Technical Rider and facilities and services as provided in this Agreement. Sahil Promotions will announce the Da Bangg Tour 2018 in a commercially reasonable amount of time prior to the first tour date to allow Local Promoter the full opportunity to benefit from such event (including, but not limited to, the opportunity to sell all tickets to the event).

3.15   Except as arising or provided for elsewhere in this agreement, Sahil Promotions shall not be responsible or liable to incur or pay costs, expenses, losses, damages, etc. to the Local Promoter in any manner whatsoever for execution of the Event.  The Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such cost, losses, damages, liability, etc. arising from the failure by the Local Promoter to perform its obligations under this agreement, up to the amount of the outstanding balance of the Purchase Price remaining unpaid.

3.16   The Local Promoter shall comply with all Local safety regulations, norms and shall ensure that it has taken all steps and precautions to avoid accidents, fire, theft, etc. which can cause damage or loss to any property (whether owned by Sahil Promotions or by any third party or by general public) and/or any life, etc.  Sahil Promotions shall, to the best of its abilities, cooperate with Local Promoter in designing (or modifying) the Event so as to comply with all applicable regulations and norms.

3.17   The Local Promoter agrees not to execute, host, or get associated either directly or indirectly (through its group/associate entities) with a Bollywood concept based show six (6) months prior to the Event Date and until such time the Event is completed, to avoid any confusion. Sahil Promotions agrees, represents and warrants that it has not, nor will it enter into an agreement with any other promoter, venue or other relevant person in the greater Toronto area for the performance or staging of the "Da Baang Tour 2018" or any

6

Bollywood themed event which is reasonably comparable or which has as members of its cast any of the individuals listed in Recital B for a period of 3 months prior to, or subsequent to July 8th, 2018 or any date that the Event may be postponed to pursuant to this Agreement.

3.18  The Local Promoter further agrees not to record any audio or video of any performance at the Event and shall prohibit, to the best of its abilities, the unauthorized use of professional cameras and recording devices inside the venues. Local Promoter further agrees to abide by the rules and regulations provided by Sahil Promotions in this regard.

## 4.  Purchase Price

4.1  In consideration of the rights and benefits granted under this Agreement, the Local Promoter shall pay the Purchase Price of Nine-Hundred and Fifty Thousand US Dollars (US$950,000.00) (the "**Purchase Price**") for the Event as set forth in the payment schedule in Section 4.4.

4.2  Local Promoter hereby acknowledges and agrees that if attendance at the Event is greater than 11,000 attendees, Local Promoter shall pay an additional Fifty-Thousand US Dollars (US$50,000.00) to Sahil Promotions, resulting in a total Purchase Price of One Million US Dollars (US$1,000,000.00). Local Promoter will provide the total number of attendees for the Event as evidenced by an Official Box Office Report to Sahil Promotions between 10:00pm and 11:00pm EST July 8, 2018. If Sahil Promotions determines, in its sole discretion, that any additional verification of the number of attendees is necessary, Local Promoter shall arrange access to the box office with venue personnel for Sahil Promotions. Once Sahil Promotions confirms the total number of attendees to its reasonable satisfaction, Sahil Promotions will confirm such number with Local Promoter, and Local Promoter shall immediately pay the additional Purchase Price set forth in this Section 4.1 to Sahil Promotions

4.3  The Local Promoter shall also pay to the Production Company by wire transfer or cashier's check four (4) weeks before the Event date for the Event's production cost, which shall not exceed $170,000.00 US Dollars. The Local Promoter shall make such payments directly to the Production Company in accordance with the payment schedule by and between the Local Promoter and the Production Company assigned by Sahil Promotions. The Production will be under Sahil Promotions' (or designee of Sahil Promotions) control.

4.4  It is agreed by the Local Promoter that the above Purchase Price will be free of all charges and taxes. All these will be to the account of the Local Promoter only. The Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such cost, losses, damages, liability, etc. caused due to breach of this section, without any limitation.

4.5  The Local Promoter further agrees to remit the Purchase Price as per the following time schedule:

| Installment No. | Amount | Dates of Payments |
|---|---|---|
| 1. | $300,000.00 | Immediately following execution and delivery of this Agreement by both parties. |
| 2. | $200,000.00 | On or before May 15, 2018 |
| 3. | $200,000.00 | On or before May 30, 2018 |
| 4. | $250,000.00 | On or before June 15, 2018 |

4.6   It is expressly agreed by the Local Promoter that the timely payment of the Purchase Price is essential to the execution of the Event by Sahil Promotions. The Local Promoter agrees to make timely payment of the Purchase Price in accordance with the dates set out in Section 4.4. It is agreed by the Local Promoter that any default in the timely payment of the Purchase Price will be considered as material breach by the Local Promoter. Further the Local Promoter agrees and acknowledges that Sahil Promotions will suffer irreparable injury and losses in the event of failure of the Local Promoter to make timely payments as contemplated under this agreement.

4.7   The Local Promoter agrees and acknowledges that Sahil Promotions will not proceed with its obligations under this Agreement unless the Purchase Price is paid, in whole, in the manner and within the time as agreed herein. The Local Promoter further agrees and acknowledges that until such time as it has paid the first Installment of the Purchase Price in the manner provided herein, the Local Promoter has no right to announce its association with the Event nor can commence any ticket sales for the Event. Notwithstanding anything herein, in case of such default, Sahil Promotions shall have the right to terminate this Agreement.

4.8   Sahil Promotions agrees and acknowledges that, notwithstanding anything else contained in this agreement, the Local Promoter shall not be required to pay the final Installment of the Purchase Price until it has first received from Sahil Promotions satisfactory evidence that Sahil Promotions has paid all applicable taxes required to be covered by any possible withholding tax amount for any Artists or performers which the Local Promoter would otherwise be required to retain arising from this Agreement, and Sahil Promotions further agrees and acknowledges that the failure by the Local Promoter to pay the final Installment in full, in accordance with this Section 4.1 will not affect the satisfaction by the Local Promoter of its obligation to pay the Purchase Price in full, and upon receipt of the amount of final Installment so reduced, the Purchase Price shall be deemed paid in full, provided however that Local Promoter agrees to release any such amount retained upon subsequent receipt of the satisfactory evidence of payment of such taxes by Sahil Promotions.

## 5.   *Intentionally Omitted*

**6.    Rights of Sahil Promotions**

6.1    All rights which are not expressly granted to the Local Promoter under this Agreement shall be owned and exploited only by Sahil Promotions at its sole discretion. A list of some of the rights owned by Sahil Promotions is provided in **Exhibit D** to this Agreement.

6.2    Sahil Promotions represents and warrants that it is the rightful owner of, and is permitted to contract in the manner set out in this agreement with respect to, the rights herein assigned to Local Promoter and required to be exercised for the lawful promotion and staging of the "Da Baang Tour 2018" including the date of the Local Promoter's event.

**7.    Insurance**

7.1    Sahil Promotions shall deliver cast, crew, props and wardrobes to the city of the performance, Sahil Promotions shall procure and maintain an insurance policy for postponement, cancellation and abetment of the Event as more particularly specified in **Exhibit E** to this Agreement. Sahil Promotions shall make the Local Promoter loss payee beneficiary on such insurance policy to the extent of Purchase Price specified in this Agreement. A copy of the certificate of insurance and insurance policy indicating the addition of the Local Promoter as loss payee will be delivered to the Local Promoter four (4) weeks from the Effective Date, failing which, the Local Promoter shall be entitled in its sole discretion to terminate this agreement upon providing notice of its intention to so terminate pursuant to this Section 7.1 then all payments made by the Local Promoter to Sahil Promotions pursuant to this Agreement shall be immediately returned to the Local Promoter without deduction or set-off, and thereafter the parties shall have no further obligation to each other. For insurance purposes, it is agreed and acknowledged by both the parties that the Event will be deemed complete after the first 30 minutes of the performance of the Event. The Local Promoter agrees and acknowledges that once the artists, crew and wardrobe have arrived in the city of performance (at the landing Airport) thereafter Sahil Promotions' obligation of delivering cast, crew, props and wardrobe shall be deemed complete.

7.2    The Local Promoter will procure and maintain a policy for general liability, third-party liability and other risks (as referred to in **Exhibit E**) from a reputable insurance company and the Sahil Promotions will jointly approve the risks, coverage and sum insured (including a comprehensive General Liability of USD $10,000,000.00 for any accident or occurrence including liabilities while traveling by any mode), types of risks, term, etc. to be covered. The Local Promoter shall pay the premium and a copy of insurance cover shall be submitted to Sahil Promotions no later than four (4) weeks from the Effective Date .

7.3    The Local Promoter shall be solely and fully responsible for ensuring the safety to property and lives against any damages, accidents, fire, etc. The Local Promoter agrees to indemnify Sahil Promotions and/or third party and/or general public against all losses, damages, costs, etc. on this account, which are not intentionally caused or resulting from the gross

negligence or willful misconduct of Sahil Promotions, or any of the cast, crew or touring members of the "Da Banng Tour 2018".

7.4   The Local Promoter shall be solely and fully responsible for procuring and maintaining an insurance policy covering its expenses, losses, etc. in case of postponement, abetment, cancellation of the Event due to its own breach or cancellation by the venue provided by the Local Promoter.

8.   **Confidentiality**

None of the parties shall for any purpose disclose to any person, firm or corporation, (except only under suitable conditions as to confidentiality to such employees, contractors or agents as are reasonably necessary for the performance of this Agreement) any information in relation to this Agreement or, except with the concurrence of the other party in writing.

9.   **Termination**

9.1   Subject to Section 9.2, should either party breach any warranty or any material term of this Agreement (referred to as the defaulting party) which affects the other party (referred to as the aggrieved party) in discharge of the defaulting party's obligations and/or affects the smooth execution of the Event, the aggrieved party shall provide written notice setting out the following timeframes for rectifying the breach:

| | |
|---|---|
| If the breach occurs from the date of signing of this Agreement up to 45 days from the date of the Event | Notice and time of 14 days will be provided for rectification by the defaulting party |
| If the breach occurs between 45 days to seven (7) days from the date of the Event | Notice and time of three (3) days will be provided for rectification by the defaulting party |
| If the breach occurs within seven (7) days from the date of the Event | Notice and time of 24 hours will be provided for rectification by the defaulting party |

9.2   If the defaulting party fails to remedy the breach within the above timeframe (or if such timeframe is no longer applicable or possible on, before or after the date of the Event), the aggrieved party shall be entitled to immediately terminate this Agreement and/or demand specific performance, without prejudice to any of its other rights under this Agreement or under the law.

9.3   Subject to Section 9.4, in the event of a default by the Local Promoter of any of his or her obligations or covenants under this Agreement, the Local Promoter shall pay to Sahil Promotions any and all costs incurred by Sahil Promotions for the Event including but not limited to costs of travel of the performers to the city of performance, accommodations for the performers at the Event City, meals, ground transportation costs incurred at the city of

performance, or lost income or revenue to Sahil Promotions, as reasonably determined by the Sahil Promotions.

9.4 In case of termination of this Agreement due to a default or breach by the Local Promoter of its obligations under this agreement which has not been remedied following notice thereof within the timeframe provided in Section 9.1, Sahil Promotions shall have the absolute right to continue the Event or to appoint any other party and provide such other party with all the rights and benefits otherwise due to the Local Promoter under this Agreement, either in part or full.

9.5 Sahil Promotions will be in default and the Local Promotor may terminate this Agreement without providing Sahil Promotions any opportunity to cure the default, effective on notice to Sahil Promotions (or on the expiration of any notice or cure period given by Local Promoter in its sole discretion or required by Applicable Law), if any of the following occurs:

9.5.1. Sahil Promotions files a voluntary petition or a petition for reorganization under any bankruptcy, insolvency or similar law;

9.5.2. Sahil Promotions consents to an involuntary petition under any bankruptcy, insolvency or similar law or fails to vacate any order approving such an involuntary petition within 90 days from the date the order is entered;

9.5.3. Sahil Promotions is adjudicated to be bankrupt, insolvent or of similar status by a court of competent jurisdiction;

9.5.4. A receiver, trustee, liquidator or similar authority is appointed over the Sahil Promotions;

In the event of the termination of this Agreement as provided for in this Section 9.5 then the Local Promoter shall immediately become entitled to a full refund of all amounts paid to Sahil Promotions, without any deduction or set-off and such refund shall be made to Local Promoter without delay and shall be due and payable without further demand or notice required to be made by the Local Promoter.

## 10. Artists & Performers

10.1 Sahil Promotions represents and warrants that the artists and performers for the Event shall be as listed in Recital B above.

10.2 It is agreed by both the parties that the Event shall be deemed to be complete 30 minutes from the actual commencement of the performance of the Event.

10.3 It is agreed by both the parties that any non-availability, non-appearance and non-performance by the artists, due to any reason whatsoever including reasons beyond control of Sahil Promotions and force majeure reasons, shall be dealt with only in the following manner:

10.3.1 **For Non-availability of any Artist other than Salman Khan:**

If both parties are unable to reach mutual agreement to continue the Event in the absence of a non-available artist, the Local Promoter shall be entitled choose between the following two options:

10.3.1.1.1 At no additional cost to the Local Promoter to require Sahil Promotions to obtain another artist of equal value and popularity, or

10.3.1.1.2 To postpone the Event for no longer than 12 months; and thereafter if the Event has not been held within the following 12 months, then Local Promoter shall immediately receive a full refund of the Purchase Price paid to Sahil Promotions.

10.3.2 **For Non-availability of Salman Khan:**

10.3.2.1.1 If both parties are unable to postpone the Event to a mutually agreed upon date within 30 days from the original Event date, then, Local Promoter shall be entitled to the following option:

10.3.2.1.2 To cancel the Event upon providing Sahil Promotions with written notification of its decision to cancel, and upon such notification this Agreement shall be terminated and Sahil Promotions shall immediately refund to the Local Promoter the Purchase Price paid to Sahil Promotions without any deduction or set off and thereafter upon receipt of such refund the parties will have no further obligations to each other.

10.3.3 **For Non-availability of Salman Khan due to Visa:**

10.3.4 Then, the Local Promoter shall be entitled to cancel the Event upon providing Sahil Promotions with written notification of its decision to cancel, and upon such notification this Agreement shall be terminated and Sahil Promotions shall immediately refund to the Local Promoter the Purchase Price paid to Sahil Promotions without any deduction or set off and thereafter upon receipt of such refund the parties will have no further obligations to each other.

10.4 Neither the Performers nor the Group shall have any obligations directly to the Local Promoter. Neither the Performers nor any member of the Group shall attend any dinners, lunches or other social functions organized by the Local Promoter either at the Local Promoter's home or elsewhere.

12

## 11. Postponement/Cancellation of the Event

11.1 Except for reasons as provided for elsewhere in this Agreement, if for any other reason or circumstances beyond the control of Sahil Promotions, including reasons under Force Majeure, the Event cannot be held on the scheduled dates (as finally notified by the Local Promoter to Sahil Promotions), the Event may be postponed at Sahil Promotions' option no later than ninety (90) days from the original date of the postponed Event and in such eventuality, the term of this Agreement shall be extended for the rescheduled date However, it is agreed by Sahil Promotions that at no point in time will the financial commitment of the Local Promoter extend beyond the Purchase Price.

11.2 However, except for reasons as provided for elsewhere in this Agreement, if the Event is delayed beyond ninety (90) days from the original scheduled date, due to Force Majeure circumstances, both the Parties shall mutually decide the course of action, which may include cancelling the Event. In such a case. the Local Promoter shall make a claim on the insurance company for the insurance policy for refund of Purchase Price paid by the Local Promoter.

## 12. Force Majeure

12.1 If due to any of the cause which is beyond any party's reasonable control (hereinafter referred to as **Force Majeure**), a party is prevented from or delayed in fulfilling its obligations under this Agreement, in whole or in part, then neither of the parties hereto shall be held responsible for any loss or damage suffered by the other as a result of the first-mentioned party's inability to fulfill its obligations. Force Majeure includes but is not limited to war, lockouts, blockade, riots, floods, natural calamities, acts of God or public enemies, fires, floods, epidemics, quarantine restrictions, strikes and other industrial disputes, unusually severe weather, typhoons, earthquakes, or volcanic eruptions, change of policies by Central/State Government of India, Mauritius, Canada or the United States of America, and disruptions due to political / industrial agitation, civil commotion and acts of terrorism.

12.2 In case of Force Majeure, the parties' mutual obligations shall be suspended during the period of Force Majeure.

## 13. Indemnity

13.1 The Local Promoter undertakes to indemnify Sahil Promotions against any and all claims or liabilities arising out of any failure by it to comply with the governing law in performing its obligations or exercising its rights hereunder mentioned in this Agreement and/or in respect of any breach, action, inaction, omission or negligence on the part of the Local Promoter in complying with terms of this Agreement.

13.2 Sahil Promotions undertakes to indemnify the Local Promoter against any and all claims or liabilities arising out of any failure by it to comply with the governing law in performing its obligations or exercising its rights hereunder mentioned in this Agreement and/or in

13

respect of any breach, action, inaction, omission or negligence on the part of the Sahil Promotions in complying with terms of this Agreement.

13.3 Without prejudice to anything stated in this Agreement, the maximum liability, if any, of a party to this Agreement in connection with any breach under this Agreement shall not exceed the Purchase Price. Notwithstanding anything contained in this agreement, neither party shall be liable to the other for incidental, indirect or consequential loss or damage including loss of actual or anticipated revenue or profits or loss of business or goodwill.

## 14. Intellectual Property Rights

14.1 The Parties agree that all intellectual property rights including trademarks, trade names, copyrights, service marks, logos, music created for the Event, all film and footage taken during and related to the Event, all photographs, DVD's, devices and other intellectual property related to the Event, shall remain the sole and exclusive property of Sahil Promotions, and the Local Promoter shall have a limited right as and by way of a license to use the same to the extent and in the manner specified in this Agreement. Any request by the Local Promoter for additional rights with respect to the intellectual property related to the Event for promotional and non-commercial purposes shall be considered by Sahil Promotions in good faith and subject to Sahil Promotions' prior written consent, which shall not be unreasonably withheld.

14.2 None of the parties hereto shall acquire or claim by virtue of this Agreement any right, title or interest in the intellectual property and brand owned by the other party. None of the parties hereto shall at any time do any act or thing which will in any way impair the rights of the other party in and to the said brand name, trademarks, patents, copyrights or logos.

14.3 Both the parties represent and warrant that their entering into this agreement and the performance of their respective obligations hereunder will not infringe intellectual property rights of any third party.

14.4 The parties have right to terminate this Agreement forthwith by giving notice in writing in case of any material breach or incurable violation of this section.

## 15. Assignment of Rights or Obligations

15.1 Sahil Promotions shall have the right to assign, transfer or delegate all or any of its rights, duties and obligations under this Agreement, upon prior consent of the Local Promoter in writing, which shall not be unreasonably withheld by the Local Promoter.

15.2 The Local Promoter however agrees that only they alone will be solely responsible to Sahil Promotions for executing the Event and for fulfilling all obligations, responsibilities and terms of this Agreement and shall not assign, transfer any of their obligations, responsibilities as specified in this Agreement.

14

16. **Entire Agreement**

The Exhibits and Recitals to this Agreement form integral part of this Agreement and shall be construed accordingly. This Agreement (including the Recitals and Exhibits hereto) constitutes the entire Agreement between the parties hereto relating to the subject matter hereof and supersedes any previous agreements or understandings. No modification or amendment hereto shall be valid and effective unless expressly previously approved and executed in writing by a duly authorized representative of each of the respective parties.

17. **Warranties**

Both the parties represent and warrant in favor of each other that they are duly incorporated/organized under the laws of its state and have full corporate authority to enter into this Agreement and to perform its obligations hereunder according to the terms hereof and that it has taken all necessary corporate or other action and has obtained all the necessary rights and consents to authorize its entry into and performance of this Agreement.

18. **Notices**

Any notice required or permitted to be given hereunder shall be in writing and sent by courier, by registered post with acknowledgement due or by facsimile and shall be addressed to the Parties at the addresses set out hereinafter.

To Sahil Promotions

Sahil Promotions Inc.
Attn: Bhavesh Patel
2605 W. Devon Avenue
Chicago, IL 60659
Telephone: 773-552-2222
Fax: 773-338-8282
Email: bhavesh@sahil.com

with a copy to:

Chawla & Ravani, P.C.
Attn: Animesh K. Ravani, Esq.
1016 W. Jackson Blvd., Suite 509
Chicago, IL 60607
Telephone:312-361-3449
Fax: 312-276-4309
Email: aravani@chawlaravani.com

To the Local Promoter:

Sunray Entertainment Inc.
Attn: Sital Panesar
515 Consumer Road, Unit 701
North York, Ontario M2J 4Z2

15

Canada
Telephone:
Email: sitalpanesar@yahoo.ca

with a copy to:

Sunray Entertainment Inc.
Attn: Michael McCarthy
515 Consumer Road, Unit 701
North York, Ontario M2J 4Z2
Canada
Telephone: 416 492 1200
Email: michael.mccarthy@sunraygroup.ca

Notice as provided herein shall be deemed to be received on the expiry of three days from the date of it being mailed or on the date on which it is sent by courier or facsimile provided that notice by facsimile shall be complete only when it is confirmed that the facsimile has been successfully sent in its entirety.

## 19. Dispute Resolution

19.1 In the event of a dispute arising which cannot be resolved by the parties within ten (10) business days, then either party may issue a notice to the other requiring senior directors of both parties to meet to discuss such dispute. Such meeting shall be at a mutually convenient location (or if the parties agree, may be by video-conference or telephone-conference).

19.2 If a dispute isn't resolved pursuant to Section 19.1 within ten (10) business days of the notice requiring the directors to meet, then either party may serve a further notice requiring senior directors to participate in a mediation session. The parties shall seek to complete any such mediation within another ten (10) business days from the date of such notice.

19.3 In the event that any dispute arising in connection with this Agreement cannot be settled mutually through mediation of the Directors of the respective parties described in Section 19.2, in such event all such disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the American Association of Arbitration by one or more arbitrators appointed in accordance with the said Rules. The venue of the Arbitration shall be Chicago.

19.4 In the event that any dispute arising in connection with this Agreement has not been resolved in accordance with this section no later than 7 days prior to the date of the staging of the Event by the Local Promoter, or if it is clear that it will not be possible to resolve the dispute within the timeframes provided herein in advance of at least 7 days prior to the date of the staging of the Event by the Local Promoter, then the Local Promoter may in its sole discretion choose to terminate this agreement and upon delivering to Sahil written confirmation of its decision to so terminate, then Sahil Promotions shall immediately refund to the Local Promoter all payments made by the Local Promoter to Sahil Promotions

without any reduction or set off and thereafter upon receipt of such refund the parties will have no further obligations to each other.

20.    **Counterparts and E-Mail**

This Agreement may be executed and delivered by the Parties in one or more counterparts, each of which when so executed and delivered will be an original, and those counterparts will together constitute one and the same instrument. Delivery of this Agreement by e-mail constitutes valid and effective delivery.

21.    **Governing Law and Jurisdiction**

This agreement is subject to the applicable laws of Illinois and shall be subject to exclusive jurisdiction of the United States District Court for the Northern District of Illinois.

*[Signature page follows]*

17

**IN WITNESS WHEREOF** the parties hereto have duly executed this Agreement to be effective as of the Effective Date.

**SAHIL PROMOTIONS:**

**SAHIL PROMOTIONS INC.**
an Illinois corporation

By: _____
Name: Bhavesh Patel
Title: _____

I have authority to bind the Corporation

**LOCAL PROMOTER:**

**SUNRAY ENTERTAINMENT INC.**
an Ontario Corporation

By: _____
Name: Ray Gupta
Title:   President

I have authority to bind the Corporation

## EXHIBIT A
### Rights & Benefits Provided to the Local Promoter by Sahil Promotions for the Event

1. Right to advertise the association with the Da Bangg Tour 2018 in Local Promoter's territory.

2. Right to have Associate or co-sponsors (as per a sponsorship layout plan to be provided by Sahil Promotions in advance of the Event).

3. In addition to the sponsors, right to have the following barter / service sponsors (as per a sponsorship layout plan to be provided by Sahil Promotions in advance of the Event) as per the following sponsorship structure:
   a. Media Sponsor
      i. Print Partner
      ii. Outdoor Partner
   b. Hospitality Partner
   c. Ground Transportation Partner
   d. Catering Partner

4. Rights to sell tickets for the Event at the mutually agreed prices between the Local Promoter and Da Bangg Tour 2018 Management.

5. Right to hire a PR Agency to promote and report the event in the media and create hype. However, the PR thrust will have to be coordinated and approved by the global PR agency of Sahil Promotions.

6. Rights to create a program brochure for the Event and sell advertising space and the brochure to sponsors and audience (plan for the same to be provided to Sahil Promotions).

7. Rights to use Local Promoter name and logo in all publicity of the Event, only as "A <Local Promoter name> Event"; which will be only as per the advertising template which will be provided by Sahil Promotions.

8. Sahil Promotions shall obtain local sponsorship in an amount not to exceed $50,000.00. Sahil Promotions shall be entitled to retain all fees from such sponsorship obtained by Sahil Promotions.

**EXHIBIT B**
## Guidelines to be Observed by the Local Promoter While Planning, Conceptualizing and Executing Advertising Promotion Activities for the Event

Local Promoter may advertise and promote the Event in local media as per the guidelines specified by Sahil Promotions in the following rider:

1. No advertising or promotional material can be issued under this Agreement in any form prior to the signing of this Agreement between Sahil Promotions and the Local Promoter.

2. All advertisements in the press, electronic media, internet, PR and outdoor publicity planned by the Local Promoter would bear the Unit Logo of the Event (as per design produced by Sahil Promotions), Sahil Promotions, the phrase "Event Managed, Scripted & Directed By Sohail Khan Entertainment and JA Events LLP", and other logos in an appropriate proportion. Sahil Promotions would provide the Unit Logos for the same use. If the Local Promoter plans an advertisement without the Unit Logo of the Event, this will be deemed a material default under the terms of this Agreement and Sahil Promotions may pursue all legal remedies available.

3. All artwork of advertisements and commercials (i.e. both audio / video / Internet) must be submitted to Sahil Promotions for a written approval before release.

4. All films / photographs / music / type fonts used by the Local Promoter for any promotion or advertisement will be provided to Sahil Promotions and artworks and copy of the advertisements must have the written approval of Sahil Promotions before release.

5. The Local Promoter will be entitled to release advertisement / commercials only after written approval by Sahil Promotions.

6. All co-promotion strategies / plans must be with the written concurrence of Sahil Promotions before the execution of the same by the Local Promoter.

7. The Local Promoter is not entitled to executing live coverage / video / photography / web cast / telecast of the Event.

8. All the mentioned guidelines are applicable to pre-event and post-event publicity / promotions.

9. All press releases dispatched by the Local Promoter must be released only after seeking prior written concurrence of Sahil Promotions, which shall not be unreasonably delayed or withheld.

10. Sponsors will be given the opportunity to provide one audio visual of 30 second duration which will be screened before the Event, as directed by Sahil Promotions.

11. Sahil Promotions will be permitted to set-up at the Event advertisements and banners relating to Sahil Promotions and future shows and events. In addition, Sahil Promotions will be permitted to sell Being Human merchandise at the Event.

12. Sahil Promotions' national sponsors may be given the opportunity to exhibit at the venue of the Event. The Local Promoter shall not object to any such booths.

13. No stage branding will be available to any Local Promoters, co-sponsors or associate sponsors.

All approval rights of Sahil Promotions shall be exercised reasonably and in good faith so as to avoid frustration of Local Promoter's purpose in entering into this Agreement. Each item submitted by Local Promoter for approval shall be deemed approved unless Sahil Promotions provides Local Promoter with specific written disapproval of such item.

**EXHIBIT C**
**Facilities, Services and Technical Rider for execution of the Event (to be provided by Local Promoter materially as set forth below) Costs & Expenses to be incurred by the Local Promoter**

1.   VENUE

Local Promoter to provide for the venue of the Event as per the Facilities, Services and Technical Rider below:
- Day 1 – Load in / Production / Build Rehearsals [will depend on availability of the arenas]
- Day 2 – Event day and Load out

Local Promoter to also provide the following at the venue:
- Sahil Promotions site office with necessary furniture and equipment
- Site production office with necessary furniture and equipment
- Meeting Room with a table and chair for minimum 15 persons
- Large storage room to store props and sets

2.TICKETING

Local Promoter to provide ticketing / Box Office Management for the tickets

3.TICKETS TO SAHIL PROMOTIONS

Local Promoter to provide 150 complimentary tickets for the Event to Sahil Promotions to be given to the artists' friends and family, as per the following breakdown:
- 25 tickets in the first five (5) rows
- 25 tickets in the next ten (10) rows
- 50 tickets in the next 15 rows
- 50 tickets in the Lower Bowl of the Arena

4.   HOTEL ACCOMODATIONS

The Local Promoter shall arrange and pay for accommodations at a Five Star hotel approved by Sahil Promotions for (2) nights, which accommodations shall include the following for approximately 110-115 people traveling:
- One (1) presidential suite
- Seven (7) luxury suites
- Eight (8) Executive Rooms
- Fifteen (15) single rooms
- Forty (40) rooms with two beds

The number of hotel rooms required for the Event may be subject to change at the reasonable discretion of Sahil Promotions. Sahil Promotions shall provide written notice to Local Promoter

of any change in the number of hotel rooms by no later than April 30, 2018.

5. FOOD AND BEVERAGE

The Local Promoter shall provide at least three (3) meals per day for each Performer, each member of the group, and Sahil Promotions. Additionally, the Local Promoter shall be responsible for all room service charges excluding long distance telephone calls of each main Performer and Sahil Promotions that are charged directly to the hotel room. Alcohol Requirements will be provided by Sahil Promotions via the Show Rider. Alcohol will be provided to Sahil Promotions team on arrival at hotel at each City.

6. LAUNDRY

Laundry Service to be provided to all Dancers, Technicians & Group members for their clothes & Costumes. The Launder Service may be arranged through the Hotel or an Outside vendor as long as the items will be returned in a timely manner as needed for the Event.

7. TRANSPORTATION

The Local Promoter shall arrange and pay for the professional transportation (no family or personal cars) to and from the airport, hotel, and venue, which shall include the following:
- Eight (8) Luxury SUV (Escalade or Range Rover)
- Five (5) Luxury cars (Mercedes or BMW)
- Twelve (12) (SUV) (Suburban or Expedition) or 7 Seater Vans
- One (1) Bus that can hold 50 people.
- One or Two (1-2) U-Haul Luggage trucks that can carry at least 300 bags & Props.
- Porters/Helpers To Load & Unload the Luggage at all times.

8. HEALTH AND SAFETY

Local Promoter to ensure that the health and safety standards are met for the event as per the specifications of the health and safety department of the territory

9. LICENSING & PERMISSIONS

Local Promoter to acquire all licenses and permission necessary for the event to be executed and provide the copy of the same to Sahil Promotions before the team leaves for the territory

10. MEDICAL ASSISTANCE

Local Promoter to provide for necessary medical assistance and care at all times at the venue and hotel as required by Sahil Promotions.

## 11. VISAS & WORK PERMITS

Local Promoter to provide "venue confirmation letter" to Sahil Promotions for visas. .

## 12. IMMIGRATION

Local Promoter to use its reasonable efforts to provide fast track custom and immigration clearance at the airport for the traveling team.

## 13. TECHNICAL PRODUCTION RIDER

Local Promoter to provide technical production for the Event as set forth in Section 3.6. Sahil Promotions will appoint a National Production Company to execute and manage the production of the Event. All payments will be pre-negotiated by Sahil Promotions and paid by the Local Promoter directly to the Production company.

Sahil Promotions will not be held liable for any claims arising out of the failure by Local Promoter to make the required payments to the Production company.

## 14.  PROPS

A list of all necessary props shall be provided to the Local Promoter no later than  June 15, 2018. All props shall be purchased by the Local Promoter.

**EXHIBIT D**
**Rights Retained by Sahil Promotions for the Event**

1. Global Title / Local Title / Presenting Sponsor / Naming Rights for the Event.

2. Global Satellite Broadcasting rights.

3. Global TV rights.

4. Global Terrestrial Broadcasting Rights.

5. Creative rights to the Event.

6. Intellectual Property Rights and all Copyrights to the Event.

7. Global PR rights of the Event/tour.

8. Rights for producing and using Event/show content in all media formats, existing or which can be developed in the future. This includes, and is not limited to: internet, DVD's, home videos, mobile telephony, theatrical etc.

9. Any and all other rights that have not been specifically conferred upon the Local Promoter in writing by Sahil Promotions.

## EXHIBIT E
### Details of insurance policies to be obtained by Sahil Promotions and by Local Promoter

A. **Insurance Policy to be obtained by Sahil Promotions to cover:**

1. Postponement, cancellation or abatement of the Event due to non-appearance of any performer listed in recital B or due to an event of Force Majeure whereby the cast and the crew cannot arrive into Canada.

2. Other defaults by Sahil Promotions (to the extent such defaults are insurable) which affect the holding of the Event.

3. Travel and personal accident policy for all cast, crew and Sahil Promotions' team provided such accidents are not due to the negligence of the Local Promoter.

4. Fire, theft or burglary to props, wardrobes and other Sahil Promotions' property.

B. **Insurance Policy to be obtained by the Local Promoter to cover:**

1. Postponement, cancellation, curtailment or abatement of the Event due to an event of Force Majeure.

2. Defaults by the Local Promoter which affect the holding of the Event.

3. General liability including a comprehensive general liability cover up to USD $5 million for any accident or occurrence including liabilities.

# Exhibit C

July 8 - 2018
11 45 PM

R_E  DABANG SHOW
(FEATURING SALMAN KHAN + OTHER)
in HAMILTON, ONTARIO CANADA.

It is agreed that the
Promoters (signed below) owe
SAHIL PROMOTIONS INC  USD 250,000.00
( USD TWO HUNDRED + FIFTY THOUSAND DOLLARS).
This amount is the balance owed
+ will be paid immediately by
the Promoters upon receipt of Canadian
witholding tax papers for performers
listed in the original agreement.
This is full + final settlement +
no other discounts/etc are agreed upon.
Original contract remains in force.

SAHIL Branchat Inc.



**AMERICAN ARBITRATION ASSOCIATION®** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

*For Consumer or Employment cases, please visit www.adr.org for appropriate forms.*

| |
|---|
| You are hereby notified that a copy of our arbitration agreement and this demand are being filed with the American Arbitration Association with a request that it commence administration of the arbitration. The AAA will provide notice of your opportunity to file an answering statement. |

| |
|---|
| Name of Respondent: Sunray Entertainment Inc./ Attn: Ray Gupta or Michael McCarthy |

| |
|---|
| Address: 515 Consumer Road - Unit 701 |

| City: North York, Ontario, Canada | State: Select... | Zip Code: M2J 4Z2 |
|---|---|---|
| Phone No.: | Fax No.: | |

| |
|---|
| Email Address: ray.gupta@sunraygroup.ca or michael.mccarthy@sunraygroup.ca |

| |
|---|
| Name of Representative (if known): Michael Simaan |

| |
|---|
| Name of Firm (if applicable): Kramer Simaan Dhillon |

| |
|---|
| Representative's Address: 120 Adelaide Street West - Suite 2100 |

| City: Toronto, Ontario, Canada | State: Select... | Zip Code: M5h1T1 |
|---|---|---|
| Phone No.: (416) 601-0965 | Fax No.: (416) 601-0712 | |

| |
|---|
| Email Address: msimaan@kramersimaan.com |

| |
|---|
| The named claimant, a party to an arbitration agreement which provides for arbitration under the Commercial Arbitration Rules of the American Arbitration Association, hereby demands arbitration. |

| |
|---|
| Brief Description of the Dispute:<br><br>See attached sheet. |

| |
|---|
| Dollar Amount of Claim: $ 250,000 |

| |
|---|
| Other Relief Sought: ☐ Attorneys Fees ☐ Interest ☐ Arbitration Costs ☐ Punitive/Exemplary ☐ Other: |

| |
|---|
| Amount enclosed: $ 1,900 |

| |
|---|
| In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |

| |
|---|
| Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:<br><br>Someone with experience in handling entertainment related disputes involving live concert performances. |

# Exhibit D

| |
|---|
| Hearing locale: Chicago, Illinois<br>*(check one)* ☐ Requested by Claimant ☑ Locale provision included in the contract |

| Estimated time needed for hearings overall: 8 hours | hours or two | days |
|---|---|---|

*Please visit our website at www.adr.org if you would like to file this case online.*
*AAA Case Filing Services can be reached at 877-495-4185.*



**AMERICAN ARBITRATION ASSOCIATION** | INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

**COMMERCIAL ARBITRATION RULES
DEMAND FOR ARBITRATION**

| | | |
|---|---|---|
| Type of Business: | | |
| Claimant: Entertainment | Respondent: Entertainment | |
| Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? | | |
| Yes - Canada | | |
| Signature (may be signed by a representative): | Date: | |
| Name of Claimant: Sahil Promotions, Inc. / Attn: Bhavesh Patel | | |
| Address (to be used in connection with this case): 2605 W. Devon Avenue | | |
| City: Chicago | State: Illinois | Zip Code: 60659 |
| Phone No.: (773) 552-2222 | Fax No.: (773) 338-8282 | |
| Email Address: bhavesh@sahil.com | | |
| Name of Representative: Paul S. Chawla/Michael W. Tootooian | | |
| Name of Firm (if applicable): Oak Brook Legal P.C. f/k/a Chawla & Ravani P.C. | | |
| Representative's Address: 3908 N. Cass Avenue | | |
| City: Westmont | State: Illinois | Zip Code: 60559 |
| Phone No.: (630) 325-5557 | Fax No.: (630) 325-6666 | |
| Email Address: tschawla@oakbrooklegal.com or mwtootooian@chawlagroup.com | | |

To begin proceedings, please send a copy of this Demand and the Arbitration Agreement, along with the filing fee as provided for in the Rules, to: American Arbitration Association, Case Filing Services, 1101 Laurel Oak Road, Suite 100 Voorhees, NJ 08043. At the same time, send the original Demand to the Respondent.

*Please visit our website at www.adr.org if you would like to file this case online.*
*AAA Case Filing Services can be reached at 877-495-4185.*

## AAA Arbitration Dispute Issues

### Sahil Promotions, Inc. v Sunray Entertainment, Inc.

Pursuant to ¶19.1, 19.2 and 19.3 of the attached Local Promoter Agreement, the Parties, Sahil Promotions, Inc. (Sahil Promotions) and Sunray Entertainment Inc. (Sunray or Local Promoter) attempted to resolve their differences to no avail. Correspondence was sent to Sunray's counsel dated September 21, 2018 setting forth the below disputed issues for discussion for which there has been no response. The letter specified a time frame of September 19-27, 2018 to conduct teleconferences with Sunray representatives to resolve the below matters before submitting these disputes to ADR, which is now being done.

The issues to be resolved by this arbitration, as outlined in the September 21, 2018, letter which is also attached, are the following:

1. Sunray has withheld funds that are necessary to making the final payment due for applicable taxes.

2. Salman Khan is one of eight entertainers at the show. Mr. Khan performed as per the contract. Sahil further delivered and met is contractual obligations.

3. Salman Khan is not restricted from meeting handicapped children. "Being Human" is Mr. Khan's brand in which he donates profits to not for profits. Mr. Khan's desire to embrace the needs of the Indian community, especially those less fortunate did not have a negative impact on a highly promoted and successful show conducted by Sunray. There are no specific references in the contract preventing Mr. Khan from making public appearances on or about the event date in the Toronto area.

4. Toronto vs. Hamilton, Canada: Do you really wish to discuss such a fallacious allegation as to marketing this show? Frankly, it is likely that if the show only promoted Hamilton, your turnout may have been substantially less. Please quantify your allegations with substance and I will discuss with my client. In addition, your client's substantial marketing budget dwarfed Sahil's.

5. Photo-Op: Sahil accommodated all the prepaid clicks required pursuant to contract. The entertainers' security detail and team attempted to best manage passionate fans as best as possible under the circumstances. The session lasted approximately 30 minutes and thereafter this photo session was completed in compliance with the contract.

6. As to any contention of outstanding invoices from hotels, detailed breakdowns for each room have been requested but never provided which Sunray was obligated to provide in the first instance for the entertainers consistent with Sunray's contractual obligations.

7. Sahil Ticket Allocations: Sunray presold at a premium seats Sunray was contractually obligated to be given to Sahil. Instead Sunray provided Sahil with substitute tickets that were substantially inferior and non-preferential seating tickets scattered in the arena. The offset offered by Sunray is rejected.

There is a balance due Sahil Promotions in the amount of $250,000 USD from Sunray.

Local Promoter Agreement

This **Local Promoter Agreement** ("Agreement") entered at Toronto on this 20th day of April 2018 ("Effective Date").

**BETWEEN**

**Sahil Promotions Inc.,** a company incorporated in Illinois and having its registered office at 2605 W. Devon Avenue, Chicago, Illinois 60659 (hereinafter referred to as "Sahil Promotions" which expression shall include its successors, liquidators and permitted assigns and any of its group companies incorporated in India or in any other place);

**AND**

**Sunray Entertainment Inc.,** a company incorporated in Toronto, Canada and having its registered office at 515 Consumer Road, Unit 701, North York, Ontario, M2J 4Z2 Canada (hereinafter referred to as the "Local Promoter" which expression shall include its successors, liquidators and permitted assigns)

## RECITALS

A. Sahil Promotions is a professional event management company.

B. Sahil Promotions has conceptualized a live show / concert titled "Da Bangg Tour 2018". The live show / concert will feature live performances by leading Indian film stars including Salman Khan, Katrina Kaif, Jacqueline Fernandaz, Sonakshi Sinha, PrabhuDeva, Daisy Shah, Manish Paul, and Guru Randhawa. The live show / concert will take place in United States of America and Canada as a part of the world tour during 2018.

C. Sahil Promotions has represented that all intellectual property rights in respect of the brand "Da Bangg Tour 2018" and merchandise products under the said brand and all other related and connected products/events, etc. are vested with it.

D. Sahil Promotions will hold multiple live shows of Da Bangg Tour 2018 in North America in 2018, including various cities in the United States of America and Canada.

E. The shows will be held in the United States of America and Canada during June/July 2018.

F. The Local Promoter has agreed to underwrite and execute a show in Hamilton, Ontario, Canada (hereinafter collectively referred to as the "Event") on July 8, 2018 and become the Local Promoter for the Event.

G. This Agreement including the Exhibits attached hereto specifies various rights and benefits available to the parties hereto and the responsibilities of both the parties. The Exhibits and these Recitals form an integral part of this Agreement and shall be construed accordingly.

1

H.   The parties now wish to record the terms and conditions upon which the Agreement shall exist.

**NOW IT IS AGREED as follows:**

**1.   Scope of this Agreement**

1.1   In consideration of the covenants on the part of the Local Promoter to be observed and performed and the payment to be made by the Local Promoter of the amounts herein specified, Sahil Promotions hereby appoints the Local Promoter as such to execute the Event. The Event will be held in Hamilton, Ontario, Canada as specified herein. The obligations of the Local Promoter in pursuance of its appointment as such would include provision of certain services and facilities for the Event and payment of the Consideration as per the terms and conditions contained in this Agreement. Sahil Promotions further agrees to provide certain rights and benefits to the Local Promoter as per the terms and conditions contained in this Agreement.

**2.   Rights and Benefits of the Local Promoter**

2.1   In view of the Local Promoter agreeing to executing the Event, payment of the Purchase Price and providing certain facilities and services, etc. in terms of this Agreement, Sahil Promotions will permit the Local Promoter to use, as and by way of a limited license, the copyrights belonging to Sahil Promotions, as set out in detail in **Exhibit A** to this Agreement.

2.2   Sahil Promotions shall design the Event and provide the performers and props (other than as set forth in **Exhibit C**) and intellectual property required to legally conduct the Event and any and all ancillary activities (including specifically any sale of branded merchandise containing intellectual property), without infringing on the rights of any third-party.  The Event shall be of world class caliber, as described in the recitals to this Agreement.

2.3   The rights and benefits so provided by Sahil Promotions to the Local Promoter shall be subject to following terms and conditions:

   a)   It is mutually agreed by the parties hereto that the Local Promoter is only entitled to exercise the rights expressly granted by Sahil Promotions as per the terms of this Agreement. All other rights that are not specifically granted to the Local Promoter under this Agreement shall always be owned and exploited by Sahil Promotions at its sole discretion.

   However, in the case that Local Promoter desires to obtain any additional rights and benefits, it will approach Sahil Promotions and the parties hereto will arrive at mutually agreed terms and conditions for such additional rights and benefits, including agreeing on the manner of sharing additional revenues arising from the exploitation of such rights and benefits.

2

b) The designs and prints of all publicity and promotional material and all video, audio and internet advertisement software and public relations related activity plans including but not limited to press releases and conferences shall be released, executed and exposed to the public or any member of press only after seeking the prior written consent of Sahil Promotions, which shall be provided by Sahil Promotions within 48 hours from the receipt. This section shall apply to all publicity and promotional material, advertisement and PR related activity plans of the Local Promoter.

c) Sahil Promotions shall be permitted to set up advertisements, sponsorship booths, or banners relating to Sahil Promotions and future shows and events at the Event. The Local Promoter shall not object to any such displays, booths or banners. No audio or video recordings will be allowed, except by Sahil Promotions or Sahil Promotions' designee (provided the venue allows such recording). The Local Promoter shall not tamper with the graphics (print and media) provided by Sahil Promotions.

d) It has been mutually agreed by the parties that Sahil Promotions shall be displayed on all creatives including but not limited to artwork, posters, banners, audio advertisements, video advertisements, promotions, press conferences and stage acknowledgements.

e) The Local Promoter agrees that all the guidelines given in this regard by Sahil Promotions as defined in **Exhibit B** to this Agreement will be strictly adhered to by the Local Promoter.

f) The Local Promoter does not commit any material breach of the terms and conditions of this Agreement and fulfills all its obligations and responsibilities in full in the manner specified in this Agreement.

## 3. Responsibilities of the Local Promoter

3.1 The Local Promoter hereby acknowledges and agrees to:

a) Underwrite the Event and pay the Purchase Price as mentioned herein;
b) Become a Local promoter and execute the Event in the manner as mentioned herein;
c) Provide other services and facilities as mentioned herein for the Event;
d) Except as otherwise provided in this agreement be solely responsible for all statutory and legal compliances and payments arising from its obligations pursuant to this agreement;
e) All publicity, advertisements and sales promotions to market and promote the Event locally;
f) All rental costs of the venue and the venue shall be air conditioned; and
g) Appropriate security for crowd and noise control before, during and after the Event.

3.2 The Local Promoter hereby acknowledges and agrees to execute the Event in Hamilton, Ontario, Canada on July 8, 2018 as specified herein at the time to be decided jointly by

3

Sahil Promotions and the Local Promoter and upon the terms of this Agreement and the Recitals and Exhibits.

3.3   Upon execution of this Agreement, the Local Promoter shall provide to Sahil Promotions a Venue Confirmation Letter. The Local Promoter will provide Sahil Promotions with details of the venue and capacities that are booked and contracted for the Event as specified herein as determined pursuant to Section 3.2, above.

3.4   The Local Promoter will make arrangements, bear, and pay for all costs and expenses for executing the Event pursuant to Section 3.1 and 3.2. An indicative list of such arrangements, facilities, costs and expenses, etc. to be made and incurred for executing this Event is provided in the Facilities, Services and Technical Rider as **Exhibit C** to this Agreement. For avoidance of doubts, the Local Promoter agrees to deliver and arrange all requirements, bear and incur all necessary costs and expenses without any limitation ensuring reasonably smooth promotion, staging and execution of this Event, irrespective of whether these are listed herein this Agreement. The Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such costs, losses, damages, liability, etc. caused due to breach of this section, without any limitation.

3.5   It is expressly agreed by the Local Promoter that the timely and adequate delivery and provision of such arrangements in the manner specified in the Facilities, Services and Technical Rider in **Exhibit C** are essential to the execution of the Event by Sahil Promotions and essence of this Agreement. Any breach of this section shall be considered a material breach of terms of this Agreement by the Local Promoter and notwithstanding anything contained in this Agreement, Sahil Promotions shall have right to terminate this Agreement without any notice and, in such cases, the notice period specified in Section 9 shall not apply to such breach.

3.6   Sahil Promotions shall have the right to appoint a team of technical experts as Pre-production Team for verification of venue, services, productions facilities and equipment, etc., to ensure that these are as per the Facilities, Services and Technical Rider specified in **Exhibit C.** The Pre-production team of 4-5 people from India will arrive in the city of performance on or before April 30, 2018 for meetings regarding the technical rider, hospitality, venue, security arrangements, and transport. Their main objective is to ensure that all guidelines to the rider and other arrangements are satisfactory. The Local Promoter will provide one (1) night accommodation for the Pre-production team, which shall consist of 4-5 rooms. Further, the Local Promoter shall also provide direct access to Sahil Promotions to all the local production companies and agencies handling production for the Event and Sahil Promotions shall have right to hold meetings and discussions directly with such production companies for any changes or modifications in the requirements in consultation with the Local Promoter. However, decision of Sahil Promotions shall be final and binding on the Local Promoter, provided however that if Sahil Promotions is not satisfied with Venue it may terminate this agreement by notifying the Local Promoter of such no later than May 7th, 2018 and shall immediately refund the Purchase Price to the Local Promoter and thereafter neither party shall have any further obligation to the other.

3.7 The Local Promoter shall provide the names of no more than 20 people that will be allowed back stage. The back stage and entry to back stage will be under Sahil Promotions' (or designee of Sahil Promotions) control.

3.8 The Local Promoter will be allowed up to 75 people (group of 4-5) to take pictures with the Performers and Group at the end of the Event not to exceed 50 clicks. A room must be arranged backstage for pictures with Promoters, Sponsors & VIP Guests as there will be no meet and greet for the Event. Local Promoter agrees that this shall be a "photo op," and acknowledges and agrees to not advertise or refer to such "photo op" as a "meet and greet." The Local Promoter will not sell any additional tickets for any photographs. There will be no personal cameras or selfies permitted. The Local Promoter will arrange for a single professional photographer to take all pictures. The entire process must be well organized and conducted in a professional manner to ensure a smooth photo session. Any intoxicated individual will be denied entry to photograph room and will not be allowed photographs of any kind with the Performers and Group. Sahil Promotions will not be liable if Local Promoter violates any of the provisions of this Section 3.8.

3.9 Any change or modification as to the quality and timings of requirements as specified in the Facilities, Services and Technical Rider shall not be permitted unless, agreed to by Sahil Promotions in writing. Sahil Promotions, while allowing and agreeing for such changes shall have right to impose such terms and conditions as it may deem necessary and as are reasonable in the circumstances.

3.10 It is agreed that any change or modification to the original content of the Event, as agreed under this Agreement will be made on the sole discretion of Sahil Promotions. However, Sahil Promotions shall make such modification after mutual discussion with the Local Promoter. Any such change will be valid only once it is expressly agreed upon in writing by both the parties, including without limitation any substitution of name talent as described in recitals. For the avoidance of doubt, no change may be made to the details of the performers who will perform at the Event without the prior written agreement of the Local Promoter.

3.11 The Local Promoter represents and warrants that it has or it shall, at its own cost and expense, arrange for obtaining all relevant permissions, approvals, licenses, etc., required for ensuring smooth execution of the Event. No later than 14 days from the date of execution of this Agreement by both parties the Local Promoter will provide a complete list of permissions, approvals, licenses, etc. required from the authorities and time frame within which these will be obtained by them. Sahil Promotions shall not be liable for any non-compliance of obtaining these permissions by the Local Promoter and the Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such costs, losses, damages, liability, etc. incurred due to breach of this clause, without any limitation.

3.12 Each of Sahil Promotions and the Local Promoter shall be responsible for their proper filing and payment of their own taxes. Notwithstanding the foregoing or anything herein, the parties agree that with the exception of the fees referred to in Section 4.2 the Local

5

Promoter shall not be responsible for any taxes or fees of the Artists and performers, Event crew or staff or any such other persons engaged or delivered by Sahil Promotions.

3.13 The Local Promoter agrees to use its reasonable efforts to assist Sahil Promotions and the performers in completing all legal procedures and formalities in respect to income tax payable on the performers' performance fees payable to the performers by Sahil Promotions, provided however that the Local Promoter shall not be required to incur any cost of any nature in providing such assistance.

3.14 It is agreed by the Local Promoter that only Sahil Promotions has the final right to announce the Event to the public. Until such time, the Local Promoter shall not announce the Event or its association with the Event or publicize or divulge any information about the Event to the media and public, excluding the production and services suppliers. However, the Local Promoter shall require all production / service suppliers to sign a Non-Disclosure Agreement in a form and substance to be mutually agreed upon, and the Local Promoter shall be solely responsible for any breach that may occur by the production / service suppliers. The Event will be announced jointly with Sahil Promotions only subsequent to fulfillment of obligations by the Local Promoter in terms of timely payment of the Purchase Price, as mentioned in Section 5 of this Agreement, and confirming all the arrangements/requirements specified in the Technical Rider and facilities and services as provided in this Agreement. Sahil Promotions will announce the Da Bangg Tour 2018 in a commercially reasonable amount of time prior to the first tour date to allow Local Promoter the full opportunity to benefit from such event (including, but not limited to, the opportunity to sell all tickets to the event).

3.15 Except as arising or provided for elsewhere in this agreement, Sahil Promotions shall not be responsible or liable to incur or pay costs, expenses, losses, damages, etc. to the Local Promoter in any manner whatsoever for execution of the Event. The Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such cost, losses, damages, liability, etc. arising from the failure by the Local Promoter to perform its obligations under this agreement, up to the amount of the outstanding balance of the Purchase Price remaining unpaid.

3.16 The Local Promoter shall comply with all Local safety regulations, norms and shall ensure that it has taken all steps and precautions to avoid accidents, fire, theft, etc. which can cause damage or loss to any property (whether owned by Sahil Promotions or by any third party or by general public) and/or any life, etc. Sahil Promotions shall, to the best of its abilities, cooperate with Local Promoter in designing (or modifying) the Event so as to comply with all applicable regulations and norms.

3.17 The Local Promoter agrees not to execute, host, or get associated either directly or indirectly (through its group/associate entities) with a Bollywood concept based show six (6) months prior to the Event Date and until such time the Event is completed, to avoid any confusion. Sahil Promotions agrees, represents and warrants that it has not, nor will it enter into an agreement with any other promoter, venue or other relevant person in the greater Toronto area for the performance or staging of the "Da Baang Tour 2018" or any

6

Bollywood themed event which is reasonably comparable or which has as members of its cast any of the individuals listed in Recital B for a period of 3 months prior to, or subsequent to July 8th, 2018 or any date that the Event may be postponed to pursuant to this Agreement.

3.18 The Local Promoter further agrees not to record any audio or video of any performance at the Event and shall prohibit, to the best of its abilities, the unauthorized use of professional cameras and recording devices inside the venues. Local Promoter further agrees to abide by the rules and regulations provided by Sahil Promotions in this regard.

4. **Purchase Price**

4.1 In consideration of the rights and benefits granted under this Agreement, the Local Promoter shall pay the Purchase Price of Nine-Hundred and Fifty Thousand US Dollars (US$950,000.00) (the "**Purchase Price**") for the Event as set forth in the payment schedule in Section 4.4.

4.2 Local Promoter hereby acknowledges and agrees that if attendance at the Event is greater than 11,000 attendees, Local Promoter shall pay an additional Fifty-Thousand US Dollars (US$50,000.00) to Sahil Promotions, resulting in a total Purchase Price of One Million US Dollars (US$1,000,000.00). Local Promoter will provide the total number of attendees for the Event as evidenced by an Official Box Office Report to Sahil Promotions between 10:00pm and 11:00pm EST July 8, 2018. If Sahil Promotions determines, in its sole discretion, that any additional verification of the number of attendees is necessary, Local Promoter shall arrange access to the box office with venue personnel for Sahil Promotions. Once Sahil Promotions confirms the total number of attendees to its reasonable satisfaction, Sahil Promotions will confirm such number with Local Promoter, and Local Promoter shall immediately pay the additional Purchase Price set forth in this Section 4.1 to Sahil Promotions

4.3 The Local Promoter shall also pay to the Production Company by wire transfer or cashier's check four (4) weeks before the Event date for the Event's production cost, which shall not exceed $170,000.00 US Dollars. The Local Promoter shall make such payments directly to the Production Company in accordance with the payment schedule by and between the Local Promoter and the Production Company assigned by Sahil Promotions. The Production will be under Sahil Promotions' (or designee of Sahil Promotions) control.

4.4 It is agreed by the Local Promoter that the above Purchase Price will be free of all charges and taxes. All these will be to the account of the Local Promoter only. The Local Promoter agrees to indemnify and keep Sahil Promotions indemnified against all such cost, losses, damages, liability, etc. caused due to breach of this section, without any limitation.

4.5 The Local Promoter further agrees to remit the Purchase Price as per the following time schedule:

7

| Installment No. | Amount | Dates of Payments |
|---|---|---|
| 1. | $300,000.00 | Immediately following execution and delivery of this Agreement by both parties. |
| 2. | $200,000.00 | On or before May 15, 2018 |
| 3. | $200,000.00 | On or before May 30, 2018 |
| 4. | $250,000.00 | On or before June 15, 2018 |

4.6 It is expressly agreed by the Local Promoter that the timely payment of the Purchase Price is essential to the execution of the Event by Sahil Promotions. The Local Promoter agrees to make timely payment of the Purchase Price in accordance with the dates set out in Section 4.4. It is agreed by the Local Promoter that any default in the timely payment of the Purchase Price will be considered as material breach by the Local Promoter. Further the Local Promoter agrees and acknowledges that Sahil Promotions will suffer irreparable injury and losses in the event of failure of the Local Promoter to make timely payments as contemplated under this agreement.

4.7 The Local Promoter agrees and acknowledges that Sahil Promotions will not proceed with its obligations under this Agreement unless the Purchase Price is paid, in whole, in the manner and within the time as agreed herein. The Local Promoter further agrees and acknowledges that until such time as it has paid the first Installment of the Purchase Price in the manner provided herein, the Local Promoter has no right to announce its association with the Event nor can commence any ticket sales for the Event. Notwithstanding anything herein, in case of such default, Sahil Promotions shall have the right to terminate this Agreement.

4.8 Sahil Promotions agrees and acknowledges that, notwithstanding anything else contained in this agreement, the Local Promoter shall not be required to pay the final Installment of the Purchase Price until it has first received from Sahil Promotions satisfactory evidence that Sahil Promotions has paid all applicable taxes required to be covered by any possible withholding tax amount for any Artists or performers which the Local Promoter would otherwise be required to retain arising from this Agreement, and Sahil Promotions further agrees and acknowledges that the failure by the Local Promoter to pay the final Installment in full, in accordance with this Section 4.1 will not affect the satisfaction by the Local Promoter of its obligation to pay the Purchase Price in full, and upon receipt of the amount of final Installment so reduced, the Purchase Price shall be deemed paid in full, provided however that Local Promoter agrees to release any such amount retained upon subsequent receipt of the satisfactory evidence of payment of such taxes by Sahil Promotions.

5. *Intentionally Omitted*

8

6. **Rights of Sahil Promotions**

6.1 All rights which are not expressly granted to the Local Promoter under this Agreement shall be owned and exploited only by Sahil Promotions at its sole discretion. A list of some of the rights owned by Sahil Promotions is provided in **Exhibit D** to this Agreement.

6.2 Sahil Promotions represents and warrants that it is the rightful owner of, and is permitted to contract in the manner set out in this agreement with respect to, the rights herein assigned to Local Promoter and required to be exercised for the lawful promotion and staging of the "Da Baang Tour 2018" including the date of the Local Promoter's event.

7. **Insurance**

7.1 Sahil Promotions shall deliver cast, crew, props and wardrobes to the city of the performance, Sahil Promotions shall procure and maintain an insurance policy for postponement, cancellation and abetment of the Event as more particularly specified in **Exhibit E** to this Agreement. Sahil Promotions shall make the Local Promoter loss payee beneficiary on such insurance policy to the extent of Purchase Price specified in this Agreement. A copy of the certificate of insurance and insurance policy indicating the addition of the Local Promoter as loss payee will be delivered to the Local Promoter four (4) weeks from the Effective Date, failing which, the Local Promoter shall be entitled in its sole discretion to terminate this agreement upon providing notice of its intention to so terminate pursuant to this Section 7.1 then all payments made by the Local Promoter to Sahil Promotions pursuant to this Agreement shall be immediately returned to the Local Promoter without deduction or set-off, and thereafter the parties shall have no further obligation to each other. For insurance purposes, it is agreed and acknowledged by both the parties that the Event will be deemed complete after the first 30 minutes of the performance of the Event. The Local Promoter agrees and acknowledges that once the artists, crew and wardrobe have arrived in the city of performance (at the landing Airport) thereafter Sahil Promotions' obligation of delivering cast, crew, props and wardrobe shall be deemed complete.

7.2 The Local Promoter will procure and maintain a policy for general liability, third-party liability and other risks (as referred to in **Exhibit E**) from a reputable insurance company and the Sahil Promotions will jointly approve the risks, coverage and sum insured (including a comprehensive General Liability of USD $10,000,000.00 for any accident or occurrence including liabilities while traveling by any mode), types of risks, term, etc. to be covered. The Local Promoter shall pay the premium and a copy of insurance cover shall be submitted to Sahil Promotions no later than four (4) weeks from the Effective Date .

7.3 The Local Promoter shall be solely and fully responsible for ensuring the safety to property and lives against any damages, accidents, fire, etc. The Local Promoter agrees to indemnify Sahil Promotions and/or third party and/or general public against all losses, damages, costs, etc. on this account, which are not intentionally caused or resulting from the gross

negligence or willful misconduct of Sahil Promotions, or any of the cast, crew or touring members of the "Da Banng Tour 2018".

7.4     The Local Promoter shall be solely and fully responsible for procuring and maintaining an insurance policy covering its expenses, losses, etc. in case of postponement, abetment, cancellation of the Event due to its own breach or cancellation by the venue provided by the Local Promoter.

8.     **Confidentiality**

None of the parties shall for any purpose disclose to any person, firm or corporation, (except only under suitable conditions as to confidentiality to such employees, contractors or agents as are reasonably necessary for the performance of this Agreement) any information in relation to this Agreement or, except with the concurrence of the other party in writing.

9.     **Termination**

9.1     Subject to Section 9.2, should either party breach any warranty or any material term of this Agreement (referred to as the defaulting party) which affects the other party (referred to as the aggrieved party) in discharge of the defaulting party's obligations and/or affects the smooth execution of the Event, the aggrieved party shall provide written notice setting out the following timeframes for rectifying the breach:

| If the breach occurs from the date of signing of this Agreement up to 45 days from the date of the Event | Notice and time of 14 days will be provided for rectification by the defaulting party |
|---|---|
| If the breach occurs between 45 days to seven (7) days from the date of the Event | Notice and time of three (3) days will be provided for rectification by the defaulting party |
| If the breach occurs within seven (7) days from the date of the Event | Notice and time of 24 hours will be provided for rectification by the defaulting party |

9.2     If the defaulting party fails to remedy the breach within the above timeframe (or if such timeframe is no longer applicable or possible on, before or after the date of the Event), the aggrieved party shall be entitled to immediately terminate this Agreement and/or demand specific performance, without prejudice to any of its other rights under this Agreement or under the law.

9.3     Subject to Section 9.4, in the event of a default by the Local Promoter of any of his or her obligations or covenants under this Agreement, the Local Promoter shall pay to Sahil Promotions any and all costs incurred by Sahil Promotions for the Event including but not limited to costs of travel of the performers to the city of performance, accommodations for the performers at the Event City, meals, ground transportation costs incurred at the city of

performance, or lost income or revenue to Sahil Promotions, as reasonably determined by the Sahil Promotions.

9.4   In case of termination of this Agreement due to a default or breach by the Local Promoter of its obligations under this agreement which has not been remedied following notice thereof within the timeframe provided in Section 9.1, Sahil Promotions shall have the absolute right to continue the Event or to appoint any other party and provide such other party with all the rights and benefits otherwise due to the Local Promoter under this Agreement, either in part or full.

9.5   Sahil Promotions will be in default and the Local Promotor may terminate this Agreement without providing Sahil Promotions any opportunity to cure the default, effective on notice to Sahil Promotions (or on the expiration of any notice or cure period given by Local Promoter in its sole discretion or required by Applicable Law), if any of the following occurs:

9.5.1.  Sahil Promotions files a voluntary petition or a petition for reorganization under any bankruptcy, insolvency or similar law;

9.5.2.  Sahil Promotions consents to an involuntary petition under any bankruptcy, insolvency or similar law or fails to vacate any order approving such an involuntary petition within 90 days from the date the order is entered;

9.5.3.  Sahil Promotions is adjudicated to be bankrupt, insolvent or of similar status by a court of competent jurisdiction;

9.5.4.  A receiver, trustee, liquidator or similar authority is appointed over the Sahil Promotions;

In the event of the termination of this Agreement as provided for in this Section 9.5 then the Local Promoter shall immediately become entitled to a full refund of all amounts paid to Sahil Promotions, without any deduction or set-off and such refund shall be made to Local Promoter without delay and shall be due and payable without further demand or notice required to be made by the Local Promoter.

## 10.  Artists & Performers

10.1  Sahil Promotions represents and warrants that the artists and performers for the Event shall be as listed in Recital B above.

10.2  It is agreed by both the parties that the Event shall be deemed to be complete 30 minutes from the actual commencement of the performance of the Event.

10.3  It is agreed by both the parties that any non-availability, non-appearance and non-performance by the artists, due to any reason whatsoever including reasons beyond control of Sahil Promotions and force majeure reasons, shall be dealt with only in the following manner:

11

### 10.3.1 For Non-availability of any Artist other than Salman Khan:

If both parties are unable to reach mutual agreement to continue the Event in the absence of a non-available artist, the Local Promoter shall be entitled choose between the following two options:

10.3.1.1.1 At no additional cost to the Local Promoter to require Sahil Promotions to obtain another artist of equal value and popularity, or

10.3.1.1.2 To postpone the Event for no longer than 12 months; and thereafter if the Event has not been held within the following 12 months, then Local Promoter shall immediately receive a full refund of the Purchase Price paid to Sahil Promotions.

### 10.3.2 For Non-availability of Salman Khan:

10.3.2.1.1 If both parties are unable to postpone the Event to a mutually agreed upon date within 30 days from the original Event date, then, Local Promoter shall be entitled to the following option:

10.3.2.1.2 To cancel the Event upon providing Sahil Promotions with written notification of its decision to cancel, and upon such notification this Agreement shall be terminated and Sahil Promotions shall immediately refund to the Local Promoter the Purchase Price paid to Sahil Promotions without any deduction or set off and thereafter upon receipt of such refund the parties will have no further obligations to each other.

### 10.3.3 For Non-availability of Salman Khan due to Visa:

10.3.4 Then, the Local Promoter shall be entitled to cancel the Event upon providing Sahil Promotions with written notification of its decision to cancel, and upon such notification this Agreement shall be terminated and Sahil Promotions shall immediately refund to the Local Promoter the Purchase Price paid to Sahil Promotions without any deduction or set off and thereafter upon receipt of such refund the parties will have no further obligations to each other.

10.4 Neither the Performers nor the Group shall have any obligations directly to the Local Promoter. Neither the Performers nor any member of the Group shall attend any dinners, lunches or other social functions organized by the Local Promoter either at the Local Promoter's home or elsewhere.

## 11. Postponement/Cancellation of the Event

11.1 Except for reasons as provided for elsewhere in this Agreement, if for any other reason or circumstances beyond the control of Sahil Promotions, including reasons under Force Majeure, the Event cannot be held on the scheduled dates (as finally notified by the Local Promoter to Sahil Promotions), the Event may be postponed at Sahil Promotions' option no later than ninety (90) days from the original date of the postponed Event and in such eventuality, the term of this Agreement shall be extended for the rescheduled date However, it is agreed by Sahil Promotions that at no point in time will the financial commitment of the Local Promoter extend beyond the Purchase Price.

11.2 However, except for reasons as provided for elsewhere in this Agreement, if the Event is delayed beyond ninety (90) days from the original scheduled date, due to Force Majeure circumstances, both the Parties shall mutually decide the course of action, which may include cancelling the Event. In such a case. the Local Promoter shall make a claim on the insurance company for the insurance policy for refund of Purchase Price paid by the Local Promoter.

## 12. Force Majeure

12.1 If due to any of the cause which is beyond any party's reasonable control (hereinafter referred to as **Force Majeure**), a party is prevented from or delayed in fulfilling its obligations under this Agreement, in whole or in part, then neither of the parties hereto shall be held responsible for any loss or damage suffered by the other as a result of the first-mentioned party's inability to fulfill its obligations. Force Majeure includes but is not limited to war, lockouts, blockade, riots, floods, natural calamities, acts of God or public enemies, fires, floods, epidemics, quarantine restrictions, strikes and other industrial disputes, unusually severe weather, typhoons, earthquakes, or volcanic eruptions, change of policies by Central/State Government of India, Mauritius, Canada or the United States of America, and disruptions due to political / industrial agitation, civil commotion and acts of terrorism.

12.2 In case of Force Majeure, the parties' mutual obligations shall be suspended during the period of Force Majeure.

## 13. Indemnity

13.1 The Local Promoter undertakes to indemnify Sahil Promotions against any and all claims or liabilities arising out of any failure by it to comply with the governing law in performing its obligations or exercising its rights hereunder mentioned in this Agreement and/or in respect of any breach, action, inaction, omission or negligence on the part of the Local Promoter in complying with terms of this Agreement.

13.2 Sahil Promotions undertakes to indemnify the Local Promoter against any and all claims or liabilities arising out of any failure by it to comply with the governing law in performing its obligations or exercising its rights hereunder mentioned in this Agreement and/or in

13

respect of any breach, action, inaction, omission or negligence on the part of the Sahil Promotions in complying with terms of this Agreement.

13.3 Without prejudice to anything stated in this Agreement, the maximum liability, if any, of a party to this Agreement in connection with any breach under this Agreement shall not exceed the Purchase Price. Notwithstanding anything contained in this agreement, neither party shall be liable to the other for incidental, indirect or consequential loss or damage including loss of actual or anticipated revenue or profits or loss of business or goodwill.

## 14. Intellectual Property Rights

14.1 The Parties agree that all intellectual property rights including trademarks, trade names, copyrights, service marks, logos, music created for the Event, all film and footage taken during and related to the Event, all photographs, DVD's, devices and other intellectual property related to the Event, shall remain the sole and exclusive property of Sahil Promotions, and the Local Promoter shall have a limited right as and by way of a license to use the same to the extent and in the manner specified in this Agreement. Any request by the Local Promoter for additional rights with respect to the intellectual property related to the Event for promotional and non-commercial purposes shall be considered by Sahil Promotions in good faith and subject to Sahil Promotions' prior written consent, which shall not be unreasonably withheld.

14.2 None of the parties hereto shall acquire or claim by virtue of this Agreement any right, title or interest in the intellectual property and brand owned by the other party. None of the parties hereto shall at any time do any act or thing which will in any way impair the rights of the other party in and to the said brand name, trademarks, patents, copyrights or logos.

14.3 Both the parties represent and warrant that their entering into this agreement and the performance of their respective obligations hereunder will not infringe intellectual property rights of any third party.

14.4 The parties have right to terminate this Agreement forthwith by giving notice in writing in case of any material breach or incurable violation of this section.

## 15. Assignment of Rights or Obligations

15.1 Sahil Promotions shall have the right to assign, transfer or delegate all or any of its rights, duties and obligations under this Agreement, upon prior consent of the Local Promoter in writing, which shall not be unreasonably withheld by the Local Promoter.

15.2 The Local Promoter however agrees that only they alone will be solely responsible to Sahil Promotions for executing the Event and for fulfilling all obligations, responsibilities and terms of this Agreement and shall not assign, transfer any of their obligations, responsibilities as specified in this Agreement.

14

16. **Entire Agreement**

The Exhibits and Recitals to this Agreement form integral part of this Agreement and shall be construed accordingly. This Agreement (including the Recitals and Exhibits hereto) constitutes the entire Agreement between the parties hereto relating to the subject matter hereof and supersedes any previous agreements or understandings. No modification or amendment hereto shall be valid and effective unless expressly previously approved and executed in writing by a duly authorized representative of each of the respective parties.

17. **Warranties**

Both the parties represent and warrant in favor of each other that they are duly incorporated/organized under the laws of its state and have full corporate authority to enter into this Agreement and to perform its obligations hereunder according to the terms hereof and that it has taken all necessary corporate or other action and has obtained all the necessary rights and consents to authorize its entry into and performance of this Agreement.

18. **Notices**

Any notice required or permitted to be given hereunder shall be in writing and sent by courier, by registered post with acknowledgement due or by facsimile and shall be addressed to the Parties at the addresses set out hereinafter.

To Sahil Promotions

Sahil Promotions Inc.
Attn: Bhavesh Patel
2605 W. Devon Avenue
Chicago, IL 60659
Telephone: 773-552-2222
Fax: 773-338-8282
Email: bhavesh@sahil.com

with a copy to:

Chawla & Ravani, P.C.
Attn: Animesh K. Ravani, Esq.
1016 W. Jackson Blvd., Suite 509
Chicago, IL 60607
Telephone:312-361-3449
Fax: 312-276-4309
Email: aravani@chawlaravani.com

To the Local Promoter:

Sunray Entertainment Inc.
Attn: Sital Panesar
515 Consumer Road, Unit 701
North York, Ontario M2J 4Z2

Canada
Telephone:
Email: sitalpanesar@yahoo.ca

with a copy to:

Sunray Entertainment Inc.
Attn: Michael McCarthy
515 Consumer Road, Unit 701
North York, Ontario M2J 4Z2
Canada
Telephone: 416 492 1200
Email: michael.mccarthy@sunraygroup.ca

Notice as provided herein shall be deemed to be received on the expiry of three days from the date of it being mailed or on the date on which it is sent by courier or facsimile provided that notice by facsimile shall be complete only when it is confirmed that the facsimile has been successfully sent in its entirety.

## 19. Dispute Resolution

19.1 In the event of a dispute arising which cannot be resolved by the parties within ten (10) business days, then either party may issue a notice to the other requiring senior directors of both parties to meet to discuss such dispute. Such meeting shall be at a mutually convenient location (or if the parties agree, may be by video-conference or telephone-conference).

19.2 If a dispute isn't resolved pursuant to Section 19.1 within ten (10) business days of the notice requiring the directors to meet, then either party may serve a further notice requiring senior directors to participate in a mediation session. The parties shall seek to complete any such mediation within another ten (10) business days from the date of such notice.

19.3 In the event that any dispute arising in connection with this Agreement cannot be settled mutually through mediation of the Directors of the respective parties described in Section 19.2, in such event all such disputes arising out of or in connection with the present contract shall be finally settled under the Rules of Arbitration of the American Association of Arbitration by one or more arbitrators appointed in accordance with the said Rules. The venue of the Arbitration shall be Chicago.

19.4 In the event that any dispute arising in connection with this Agreement has not been resolved in accordance with this section no later than 7 days prior to the date of the staging of the Event by the Local Promoter, or if it is clear that it will not be possible to resolve the dispute within the timeframes provided herein in advance of at least 7 days prior to the date of the staging of the Event by the Local Promoter, then the Local Promoter may in its sole discretion choose to terminate this agreement and upon delivering to Sahil written confirmation of its decision to so terminate, then Sahil Promotions shall immediately refund to the Local Promoter all payments made by the Local Promoter to Sahil Promotions

16

without any reduction or set off and thereafter upon receipt of such refund the parties will have no further obligations to each other.

20. **Counterparts and E-Mail**

This Agreement may be executed and delivered by the Parties in one or more counterparts, each of which when so executed and delivered will be an original, and those counterparts will together constitute one and the same instrument. Delivery of this Agreement by e-mail constitutes valid and effective delivery.

21. **Governing Law and Jurisdiction**

This agreement is subject to the applicable laws of Illinois and shall be subject to exclusive jurisdiction of the United States District Court for the Northern District of Illinois.

*[Signature page follows]*

17

**IN WITNESS WHEREOF** the parties hereto have duly executed this Agreement to be effective as of the Effective Date.

SAHIL PROMOTIONS:

**SAHIL PROMOTIONS INC.**
an Illinois corporation

By: _____
Name: Bhavesh Patel
Title: _____

I have authority to bind the Corporation

LOCAL PROMOTER:

**SUNRAY ENTERTAINMENT INC.**
an Ontario Corporation

By: _____
Name: Ray Gupta
Title: President

I have authority to bind the Corporation

18

**EXHIBIT A**

**Rights & Benefits Provided to the Local Promoter by Sahil Promotions for the Event**

1. Right to advertise the association with the Da Bangg Tour 2018 in Local Promoter's territory.

2. Right to have Associate or co-sponsors (as per a sponsorship layout plan to be provided by Sahil Promotions in advance of the Event).

3. In addition to the sponsors, right to have the following barter / service sponsors (as per a sponsorship layout plan to be provided by Sahil Promotions in advance of the Event) as per the following sponsorship structure:
   a. Media Sponsor
      i. Print Partner
      ii. Outdoor Partner
   b. Hospitality Partner
   c. Ground Transportation Partner
   d. Catering Partner

4. Rights to sell tickets for the Event at the mutually agreed prices between the Local Promoter and Da Bangg Tour 2018 Management.

5. Right to hire a PR Agency to promote and report the event in the media and create hype. However, the PR thrust will have to be coordinated and approved by the global PR agency of Sahil Promotions.

6. Rights to create a program brochure for the Event and sell advertising space and the brochure to sponsors and audience (plan for the same to be provided to Sahil Promotions).

7. Rights to use Local Promoter name and logo in all publicity of the Event, only as "A <Local Promoter name> Event"; which will be only as per the advertising template which will be provided by Sahil Promotions.

8. Sahil Promotions shall obtain local sponsorship in an amount not to exceed $50,000.00. Sahil Promotions shall be entitled to retain all fees from such sponsorship obtained by Sahil Promotions.

19

**EXHIBIT B**
**Guidelines to be Observed by the Local Promoter While Planning, Conceptualizing and Executing Advertising Promotion Activities for the Event**

Local Promoter may advertise and promote the Event in local media as per the guidelines specified by Sahil Promotions in the following rider:

1. No advertising or promotional material can be issued under this Agreement in any form prior to the signing of this Agreement between Sahil Promotions and the Local Promoter.

2. All advertisements in the press, electronic media, internet, PR and outdoor publicity planned by the Local Promoter would bear the Unit Logo of the Event (as per design produced by Sahil Promotions), Sahil Promotions, the phrase "Event Managed, Scripted & Directed By Sohail Khan Entertainment and JA Events LLP", and other logos in an appropriate proportion. Sahil Promotions would provide the Unit Logos for the same use. If the Local Promoter plans an advertisement without the Unit Logo of the Event, this will be deemed a material default under the terms of this Agreement and Sahil Promotions may pursue all legal remedies available.

3. All artwork of advertisements and commercials (i.e. both audio / video / Internet) must be submitted to Sahil Promotions for a written approval before release.

4. All films / photographs / music / type fonts used by the Local Promoter for any promotion or advertisement will be provided to Sahil Promotions and artworks and copy of the advertisements must have the written approval of Sahil Promotions before release.

5. The Local Promoter will be entitled to release advertisement / commercials only after written approval by Sahil Promotions.

6. All co-promotion strategies / plans must be with the written concurrence of Sahil Promotions before the execution of the same by the Local Promoter.

7. The Local Promoter is not entitled to executing live coverage / video / photography / web cast / telecast of the Event.

8. All the mentioned guidelines are applicable to pre-event and post-event publicity / promotions.

9. All press releases dispatched by the Local Promoter must be released only after seeking prior written concurrence of Sahil Promotions, which shall not be unreasonably delayed or withheld.

10. Sponsors will be given the opportunity to provide one audio visual of 30 second duration which will be screened before the Event, as directed by Sahil Promotions.

11. Sahil Promotions will be permitted to set-up at the Event advertisements and banners relating to Sahil Promotions and future shows and events. In addition, Sahil Promotions will be permitted to sell Being Human merchandise at the Event.

12. Sahil Promotions' national sponsors may be given the opportunity to exhibit at the venue of the Event. The Local Promoter shall not object to any such booths.

13. No stage branding will be available to any Local Promoters, co-sponsors or associate sponsors.

All approval rights of Sahil Promotions shall be exercised reasonably and in good faith so as to avoid frustration of Local Promoter's purpose in entering into this Agreement. Each item submitted by Local Promoter for approval shall be deemed approved unless Sahil Promotions provides Local Promoter with specific written disapproval of such item.

## EXHIBIT C
**Facilities, Services and Technical Rider for execution of the Event (to be provided by Local Promoter materially as set forth below) Costs & Expenses to be incurred by the Local Promoter**

1.  VENUE

Local Promoter to provide for the venue of the Event as per the Facilities, Services and Technical Rider below:
- Day 1 – Load in / Production / Build Rehearsals [will depend on availability of the arenas]
- Day 2 – Event day and Load out

Local Promoter to also provide the following at the venue:
- Sahil Promotions site office with necessary furniture and equipment
- Site production office with necessary furniture and equipment
- Meeting Room with a table and chair for minimum 15 persons
- Large storage room to store props and sets

2.TICKETING

Local Promoter to provide ticketing / Box Office Management for the tickets

3.TICKETS TO SAHIL PROMOTIONS

Local Promoter to provide 150 complimentary tickets for the Event to Sahil Promotions to be given to the artists' friends and family, as per the following breakdown:
- 25 tickets in the first five (5) rows
- 25 tickets in the next ten (10) rows
- 50 tickets in the next 15 rows
- 50 tickets in the Lower Bowl of the Arena

4.  HOTEL ACCOMODATIONS

The Local Promoter shall arrange and pay for accommodations at a Five Star hotel approved by Sahil Promotions for (2) nights, which accommodations shall include the following for approximately 110-115 people traveling:
- One (1) presidential suite
- Seven (7) luxury suites
- Eight (8) Executive Rooms
- Fifteen (15) single rooms
- Forty (40) rooms with two beds

The number of hotel rooms required for the Event may be subject to change at the reasonable discretion of Sahil Promotions. Sahil Promotions shall provide written notice to Local Promoter

22

of any change in the number of hotel rooms by no later than April 30, 2018.

5. FOOD AND BEVERAGE

The Local Promoter shall provide at least three (3) meals per day for each Performer, each member of the group, and Sahil Promotions. Additionally, the Local Promoter shall be responsible for all room service charges excluding long distance telephone calls of each main Performer and Sahil Promotions that are charged directly to the hotel room. Alcohol Requirements will be provided by Sahil Promotions via the Show Rider. Alcohol will be provided to Sahil Promotions team on arrival at hotel at each City.

6. LAUNDRY

Laundry Service to be provided to all Dancers, Technicians & Group members for their clothes & Costumes. The Launder Service may be arranged through the Hotel or an Outside vendor as long as the items will be returned in a timely manner as needed for the Event.

7. TRANSPORTATION

The Local Promoter shall arrange and pay for the professional transportation (no family or personal cars) to and from the airport, hotel, and venue, which shall include the following:
- Eight (8) Luxury SUV (Escalade or Range Rover)
- Five (5) Luxury cars (Mercedes or BMW)
- Twelve (12) (SUV) (Suburban or Expedition) or 7 Seater Vans
- One (1) Bus that can hold 50 people.
- One or Two (1-2) U-Haul Luggage trucks that can carry at least 300 bags & Props.
- Porters/Helpers To Load & Unload the Luggage at all times.

8. HEALTH AND SAFETY

Local Promoter to ensure that the health and safety standards are met for the event as per the specifications of the health and safety department of the territory

9. LICENSING & PERMISSIONS

Local Promoter to acquire all licenses and permission necessary for the event to be executed and provide the copy of the same to Sahil Promotions before the team leaves for the territory

10. MEDICAL ASSISTANCE

Local Promoter to provide for necessary medical assistance and care at all times at the venue and hotel as required by Sahil Promotions.

11. VISAS & WORK PERMITS

Local Promoter to provide "venue confirmation letter" to Sahil Promotions for visas. .

12. IMMIGRATION

Local Promoter to use its reasonable efforts to provide fast track custom and immigration clearance at the airport for the traveling team.

13. TECHNICAL PRODUCTION RIDER

Local Promoter to provide technical production for the Event as set forth in Section 3.6. Sahil Promotions will appoint a National Production Company to execute and manage the production of the Event. All payments will be pre-negotiated by Sahil Promotions and paid by the Local Promoter directly to the Production company.

Sahil Promotions will not be held liable for any claims arising out of the failure by Local Promoter to make the required payments to the Production company.

14. PROPS

A list of all necessary props shall be provided to the Local Promoter no later than June 15, 2018. All props shall be purchased by the Local Promoter.

**EXHIBIT D**
**Rights Retained by Sahil Promotions for the Event**

1. Global Title / Local Title / Presenting Sponsor / Naming Rights for the Event.

2. Global Satellite Broadcasting rights.

3. Global TV rights.

4. Global Terrestrial Broadcasting Rights.

5. Creative rights to the Event.

6. Intellectual Property Rights and all Copyrights to the Event.

7. Global PR rights of the Event/tour.

8. Rights for producing and using Event/show content in all media formats, existing or which can be developed in the future. This includes, and is not limited to: internet, DVD's, home videos, mobile telephony, theatrical etc.

9. Any and all other rights that have not been specifically conferred upon the Local Promoter in writing by Sahil Promotions.

25

**EXHIBIT E**

**Details of insurance policies to be obtained by Sahil Promotions and by Local Promoter**

A.    **Insurance Policy to be obtained by Sahil Promotions to cover:**

1. Postponement, cancellation or abatement of the Event due to non-appearance of any performer listed in recital B or due to an event of Force Majeure whereby the cast and the crew cannot arrive into Canada.

2. Other defaults by Sahil Promotions (to the extent such defaults are insurable) which affect the holding of the Event.

3. Travel and personal accident policy for all cast, crew and Sahil Promotions' team provided such accidents are not due to the negligence of the Local Promoter.

4. Fire, theft or burglary to props, wardrobes and other Sahil Promotions' property.

B.    **Insurance Policy to be obtained by the Local Promoter to cover:**

1. Postponement, cancellation, curtailment or abatement of the Event due to an event of Force Majeure.

2. Defaults by the Local Promoter which affect the holding of the Event.

3. General liability including a comprehensive general liability cover up to USD $5 million for any accident or occurrence including liabilities.

26



AMERICAN ARBITRATION ASSOCIATION®

INTERNATIONAL CENTRE FOR DISPUTE RESOLUTION®

## ARBITRATION ANSWERING STATEMENT AND COUNTERCLAIM OR JOINDER/CONSOLIDATION REQUEST

| Name of Claimant: Sahil Promotions Inc./ Attn: Bhavesh Patel | | | Name of Representative (if known): Paul S. Chawla/Michael W. Tootooian | | |
|---|---|---|---|---|---|
| Address: 2605 W. Devon Ave. | | | Name of Firm (if applicable): Oak Brook Legal P/C, f/k/a/ Chawla & Ravani P.C. | | |
| | | | Representative's Address: 3908 N. Cass Ave. | | |
| City: Chicago | State: Illinois | Zip Code: 60659 | City: Westmount | State: Illinois | Zip Code: 60559 |
| Phone No.: 773-552-2222 | Fax No.: 773-338-8282 | | Phone No.: 630-325-5557 | Fax No.: 630-325-6666 | |
| Email Address: bhavesh@sahil.com | | | Email Address: tschawla@oakbrooklegal.com or mwtootooian@chawlagroup.com | | |
| AAA Case No. (if known): 01-20-0014-0906 | | | Filing a Counterclaim: ☑ Yes ☐ No *If yes, please describe nature of counterclaim in space below.* | | |

Please answer Claimant's Demand for Arbitration (and describe your counterclaim, if applicable). *Attach additional pages as necessary.*

See attached at Schedule "A"

Are any parties to this arbitration, or their controlling shareholder or parent company, from different countries than each other? ☑ Yes ☐ No

☐ Joinder/Consolidation Request. Provide the contact information for parties to be joined, and the case number(s) if consolidation is requested, on a separate attachment.

| Dollar Amount of Claim or Counterclaim: $ 150,000 | Other Relief Sought: ☑ Attorneys Fees ☑ Interest ☑ Arbitration Costs ☑ Punitive/ Exemplary ☐ Other |
|---|---|
| Filing Fee: (if any) $ 1,900.00 | In accordance with Fee Schedule: ☑ Flexible Fee Schedule ☐ Standard Fee Schedule |

Please describe the qualifications you seek for arbitrator(s) to be appointed to hear this dispute:

An attorney familiar with disputes related to the entertainment and live concert industry. The arbitrator should also be familiar with the geography of the Greater Toronto Area in Ontario, Canada, and ideally familiar with Bollywood/the South Asian community.

| Hearing locale: | (check one) ☑ Agree to requested locale ☐ Objection to locale  Proposed alternative locale: | | |
|---|---|---|---|
| Estimated time needed for hearings overall: | | hours or 2 | days |
| Signature (may be signed by a representative): *[signature]* | | Date: September 25, 2020 | |
| Name of Respondent: Sunray Entertainment Inc. | | Name of Representative: Micheal Simaan/Rahul Gandotra | |
| Address (to be used in connection with this case): 515 Consumers Road - Unit 1701 | | Name of Firm (if applicable): Kramer Simaan Dhillon LLP | |
| | | Representative's Address: 120 Adelaide Street West, Suite 2100 | |
| City: North York | State: Ontario | Zip Code: M2J 4Z2 | City: Toronto | State: Ontario | Zip Code: M5H1T1 |
| Phone No.: | Fax No.: | | Phone No.: 416-601-6820 | Fax No.: 416-601-0712 | |
| Email Address: ray.gupta@sunraygroup.ca/michael.mccarthy@sunraygroup.ca | | | Email Address: msimaan@kramersimaan.com/rgandotra@kramersimaan.com | | |

**Please send a copy of this Answering Statement to all other case participants and the AAA. If you are filing a counterclaim, please include the appropriate Filing Fee, if any, per the applicable Rules.**

*Please visit our website at www.adr.org if you would like to file this online. If you have questions, please contact your AAA case representative. If you do not know who your representative is, please contact Customer Service at 1-800-778-7879 for assistance.*

# Exhibit E

Schedule "A"

# Sahil Promotions Inc. v. Sunray Entertainment Inc.

## Response to Sahil Promotions' Claim

On April 20, 2018, Sunray Entertainment Inc. ("Sunray") and, Sahil Promotions Inc. ("Sahil") entered into a Local Promoter Agreement (the "Agreement") with respect to a stage performance/concert event, titled the "Da Bangg Tour 2018" (the "Event").

The Event was scheduled, and did take place, on July 8, 2018 at the First Ontario Place in Hamilton, Ontario.

A copy of the Agreement is appended as part of the within document.

By way of letter dated August 16, 2018 (the "First Sahil Letter"), Sahil first alleged that Sunray was in material breach of the Agreement for failure to make payment of $250,000.00, relating to payment of the fourth installment of the purchase price (the "Fourth Installment").

Sahil now again seeks payment of this same amount under its demand for arbitration, under the pretense that Sunray has withheld funds that are necessary to make the final payment due for applicable taxes (Item 1 in Sahil's Demand for Arbitration).

However, based on reading of Section 4 of the Agreement, and specifically Section 4.8, it is clearly stated that payment of the Fourth Installment **will not be required** until Sahil provides satisfactory evidence to Sunray that Sahil has paid all applicable taxes required to be covered by any possible withholding tax amounts for any artists or performers.

Sunray states that Sahil has not met the precondition for making any demand for the Fourth Payment as it has yet to furnish any such evidence regarding payment of withholding taxes, despite the parties' communications following the First Sahil Letter. To the contrary, it appears from paragraph 1 of Sahil's Demand for Arbitration that such a payment has not yet been made.

As such, there is no payment owing by Sunray on the Fourth Installment, and accordingly Sunray is not in breach of the Agreement..

When and if, Sahil makes the required payment, Sunray has clearly indicated that it has a number of claims against Sahil which it will rely upon to set-off any amounts due and owing as part of the Fourth Installment. These damages are more particularly described below:

### Schedule "A"

## Sunray's Counterclaim against Sahil

Sahil's alleged breaches of the Agreement, some of which have been included in Sahil's demand for arbitration, relate to the following issues:

1. Salman Khan's Attendance at the "Being Human" Event;

2. Sahil's failure to properly promote the Event;

3. Sahil's failure to deliver the "Photo-Op" agreed to as part of the Event;

4. Improper hotel charges charged to Sunray; and

5. Sahil's non-payment for tickets provide by Sunray to the Event.

### Sahil's Failure to Promote the Event

Sahil's promotion of the Event was misleading and inadequate.

In all of the material advertised and approved by Sahil, the Event was advertised as being hosted in Toronto when in fact it known to Sahil that the Event would be held in Hamilton, Ontario, which is not part of the Greater Toronto Area, and does not even border the City of Toronto. There are in fact two cities between Toronto and Hamilton.

For further reference, the "Being Human Event" (defined below) was held in Mississauga, Ontario, an area inside the Greater Toronto Area.

Sahil's decision to misrepresent the event as being held in Toronto was detrimental to ticket sales/attendance and, coupled with the Being Human Event the next day in the Greater Toronto Area, this advertising caused considerable confusion in the public.

### The Event "Photo Op"

As per Section 3.8 of the Agreement, on the date of the event, Sunray was entitled to a "photo op" with the performers upon completion of the Event. Sunray fully complied with its obligations as per said section, and arranged a backstage room for promoters, sponsors and VIP guests with a professional photographer hired to conduct the "photo op".

Notwithstanding same, Sahil and its representatives were abrasive, rude and flippant to the attendees of the "photo op", and Sahil otherwise failed to comply with its obligations under Section 3.8.

## Schedule "A"

After a significant delay in commencing the "photo op" after the Event, Sunray's guests were then rushed, forced to take photos with groups larger than those contemplated by section 3.8 and Sunray was given only 26 photographs from the entire "photo op".

The actual "photo op" lasted less than 30 minutes.

### Request for Additional Tickets to the Event

As per the Exhibit "C" to the Agreement, Sunray provided Sahil with 150 complimentary tickets for the Event.

On the day of the Event, Sahil demanded and insisted that Sunray provide it with additional tickets to the Event.

Sunray reluctantly acquiesced, and provided 97 additional tickets to Sahil (the "Additional Tickets").

The Additional Tickets had a value of $400.00 each, totaling $38,800.00.

As the Additional Tickets were not mandated by the Agreement, Sahil must pay Sunray the funds for the Additional Tickets.

### Salman Khan's Attendance at Being Human Event

As per the Agreement, and based on Sunray's understanding from conversations with Sahil, through its President, Mr. Bhavesh Patel, Sunray understood that the artists performing in the Event, would be performing exclusively as part of the Event.

As such, it was understood that artists performing at the Event would not be performing, or otherwise making any other promotional or public attendances in the region at or around the time of the Event.

Article 3.17 of the Agreement speaks to this understanding by recognizing that Sahil would not enter into agreements with other promoters, venues or persons in the greater Toronto Area for any event that has members of its cast or those listed in Recital B for a period of three months prior to, or subsequent to the Event date (July 8, 2018).

Contrary to Article 3.17 of the Agreement, not only did Mr. Salman Khan attend another event in the Greater Toronto Area, namely at Square One Shopping Centre in Mississauga, Ontario (about a 30-40 minute drive from where the Event was held), but that said event was held the day immediately following the Event, on July 9, 2018 (the "Being Human Event").

The Being Human Event was free of charge.

## Schedule "A"

Notwithstanding that Sahil had represented to Sunray that by being the Local Promoter for the Event, it would receive the sole benefit of the artists listed in Recital B, Mr. Khan was allowed to participate in the Being Human Event.

Video footage of the Being Human Event was streamed on Mr. Patel's Facebook page, with the videos received tens of thousands of views.

Mr. Patel's page listed him as the "CEO at Sahil" and "Founder at SAHIL Promotions".

Mr. Patel's page also contains content regarding the Event and the "Da Bangg Tour 2018" at-large.

In light of Mr. Khan's attendance at the Being Human Event, and the promotion of same by Sahil, Sahil is in breach of the Agreement and/or made a material misrepresentation to Sunray in the process of negotiating the Agreement and ensuring that Sunray received the full benefits contemplated under the Agreement.

Sunray further maintains that ticket sales for the Event were detrimentally affected as a direct result of the Being Human Event, which was held in close proximity to the event, both geographically and temporally, and allowed consumers to see, interact and hear from Mr. Khan for free.

### Improper Hotel Charges

Sunray was forced to improperly incur the costs of two invoices from the Four Seasons Hotel (enclosed), totaling $14,535.13. The invoices detail charges for which Sunray is not responsible. These include a room charge of $6,000.00 and several "Room Cleaning Fees" of $500.00.

Sunray maintains that the charges on the enclosed invoices are improper and not the responsibility of Sunray.

Sunray complied with its obligations to provide room and board as per the Agreement, and as such Sahil must reimburse Sunray for the charges associated with these invoices.



**FOUR SEASONS**
HOTEL
TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

Room Number:      9019
Arrival Date:     07-06-18
Departure Date:   07-10-18

Folio No:
**INVOICE**

Page No:          1 of 6

| Date | Description | | Charges | Credits |
|------|-------------|---|---------|---------|
| 07-07-18 | Room Charge | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 395.00 | |
| 07-07-18 | Room Tax (HST) | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 51.35 | |
| 07-07-18 | Municipal Accommodation tax (M/ | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 15.80 | |
| 07-07-18 | MAT HST | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 2.05 | |
| 07-08-18 | Cafe Boulud Breakfast | Room# 2009 : CHECK# 2336  Singh Ayushi #2009=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 38.90 | |
| 07-08-18 | Room Service Breakfast | Room# 0406 : CHECK# 1477  Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 48.82 | |
| 07-08-18 | Room Service Lunch | Room# 0517 : CHECK# 1476  Katani Reza #0517=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 46.10 | |
| 07-08-18 | Room Service Lunch | Room# 2109 : CHECK# 1509  Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 139.22 | |
| 07-08-18 | Laundry & Dry Cleaning | Room# 2109 : CHECK# 2895  Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 126.56 | |
| 07-08-18 | Laundry & Dry Cleaning | Room# 2109 : CHECK# 2897  Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 75.71 | |
| 07-08-18 | Other Retail Sales | 30 Four Seasons Envelopes | 30.00 | |
| 07-08-18 | Laundry & Dry Cleaning | Room# 2109 : CHECK# 2899  Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh | 84.75 | |



FOUR SEASONS
HOTEL
TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| | |
|---|---|
| Room Number: | 9019 |
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No:
**INVOICE**

Page No:     2 of 6

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| | | #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | | |
| 07-08-18 | Laundry & Dry Cleaning | Room# 2109 : CHECK# 2900 Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 82.49 | |
| 07-08-18 | Laundry & Dry Cleaning | Room# 2109 : CHECK# 2751 Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 83.62 | |
| 07-08-18 | Room Service Dinner | Room# 2109 : CHECK# 1526 Singh Jolly Gurmeet Singh Sunder #2109=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 97.63 | |
| 07-08-18 | Guest Parking | 4695 - charges for past 2 nights 07-08-18 & 07-07-18 Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 97.34 | |
| 07-08-18 | Guest Parking HST | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 12.65 | |
| 07-08-18 | Room Charge | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 395.00 | |
| 07-08-18 | Room Tax (HST) | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 51.35 | |
| 07-08-18 | Municipal Accommodation tax (M/ | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 15.80 | |
| 07-08-18 | MAT HST | Khan Amara Rustam #0406=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 2.05 | |
| 07-09-18 | Room Service Breakfast | Room# 0611 : CHECK# 1586 Shah Dhwani Jayant #0611=>Sayeed Ayesha #0611 Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 37.97 | |
| 07-09-18 | Room Service Breakfast | Room# 1111 : CHECK# 1593 Tarange Kiran | 27.12 | |



**FOUR SEASONS**

HOTEL

TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

Room Number:   9019
Arrival Date:   07-06-18
Departure Date:   07-10-18

Folio No:
**INVOICE**

Page No:   3 of 6

| Date | Description | | Charges | Credits |
|------|-------------|---|---------|---------|
| | | Anant #1111=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | | |
| 07-09-18 | Other Retail Sales | tynenol Shah Dhwani Jayant #0611=>Sayeed Ayesha #0611 Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 10.00 | |
| 07-09-18 | Room Service Lunch | Room# * : CHECK# 1631 Paul Vivek #2012=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 153.23 | |
| 07-09-18 | Room Charge | 1/2 day rate - 3pm checkout Routed From Muttathil Shaan Joseph Of Room #0405 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 197.50 | |
| 07-09-18 | Room Tax (HST) | Routed From Muttathil Shaan Joseph Of Room #0405 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 25.68 | |
| 07-09-18 | Municipal Accommodation tax (MA | Routed From Muttathil Shaan Joseph Of Room #0405 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 7.90 | |
| 07-09-18 | MAT HST | Routed From Muttathil Shaan Joseph Of Room #0405 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 1.03 | |
| 07-09-18 | Room Charge | 1/2 day rate - 3pm checkout Routed From Jamir Narola Of Room #0411 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 197.50 | |
| 07-09-18 | Room Tax (HST) | Routed From Jamir Narola Of Room #0411 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 25.68 | |

60 YORKVILLE AVENUE, TORONTO, ONTARIO M4W 0A4, CANADA
TEL: (416) 964-0411 FAX: (416) 964-2301 www.fourseasons.com



## FOUR SEASONS
### HOTEL
TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| Room Number: | 9019 |
|---|---|
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No:
**INVOICE**

Page No:     4 of 6

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| 07-09-18 | Municipal Accommodation tax (M. | Routed From Jamir Narola Of Room #0411 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 7.90 | |
| 07-09-18 | MAT HST | Routed From Jamir Narola Of Room #0411 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 1.03 | |
| 07-09-18 | Room Charge | 1/2 day rate - 3pm checkout Singh Ram Babu #0811=>Sunray Entertainment Group #9019 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 197.50 | |
| 07-09-18 | Room Tax (HST) | Singh Ram Babu #0811=>Sunray Entertainment Group #9019 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 25.68 | |
| 07-09-18 | Municipal Accommodation tax (M. | Singh Ram Babu #0811=>Sunray Entertainment Group #9019 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 7.90 | |
| 07-09-18 | MAT HST | Singh Ram Babu #0811=>Sunray Entertainment Group #9019 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 1.03 | |
| 07-09-18 | Room Tax (HST) | Routed From Sayeed Ayesha Of Room #0611 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 25.68 | |
| 07-09-18 | Municipal Accommodation tax (M. | Routed From Sayeed Ayesha Of Room #0611 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 7.90 | |
| 07-09-18 | MAT HST | Routed From Sayeed Ayesha Of Room #0611 Sunray Entertainment Group #9019=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 1.03 | |

60 YORKVILLE AVENUE, TORONTO, ONTARIO M4W 0A4, CANADA
TEL: (416) 964-0411 FAX: (416) 964-2301 www.fourseasons.com



**FOUR SEASONS**
HOTEL
TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| | |
|---|---|
| Room Number: | 9019 |
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No:
**INVOICE**

Page No:      5 of 6

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| 07-09-18 | Late Departure Fee | Late check out Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 197.50 | |
| 07-09-18 | Room Tax (HST) | Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 25.68 | |
| 07-09-18 | Private Bar Beer | Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 11.30 | |
| 07-09-18 | Private Bar Soda | Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 6.78 | |
| 07-09-18 | Private Bar Soda | Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 6.78 | |
| 07-09-18 | Private Bar Soda | Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 6.78 | |
| 07-09-18 | Private Bar Food | Line# 405 : Protein Bar Lost Interface Charges #9500=>Muttathil Shaan Joseph #0405 Muttathil Shaan Joseph #0405=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 10.17 | |
| 07-09-18 | Room Tax (HST) | Routed From Katani Reza Of Room #0517 Sunray Entertainment Group #9019=>(PR) Khan Salman Salim #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 51.35 | |
| 07-09-18 | Municipal Accommodation tax (M, | Routed From Katani Reza Of Room #0517 Sunray Entertainment Group #9019=>(PR) Khan Salman Salim #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 15.80 | |
| 07-09-18 | MAT HST | Routed From Katani Reza Of Room #0517 Sunray Entertainment Group #9019=>(PR) Khan Salman Salim #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 2.05 | |
| 07-10-18 | Private Bar Soda | Line# 611 : Coconut Water Lost Interface | 9.04 | |

60 YORKVILLE AVENUE, TORONTO, ONTARIO M4W 0A4, CANADA
TEL: (416) 964-0411  FAX: (416) 964-2301 www.fourseasons.com



## FOUR SEASONS
### HOTEL
#### TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| | |
|---|---|
| Room Number: | 9019 |
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No:
**INVOICE**

Page No:        6 of 6

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| | | Charges #9500=>Sayeed Ayesha #0611 Sayeed Ayesha #0611=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | | |
| 07-11-18 | Room Service Breakfast | Room# 1512 : CHECK# 1735 Bamberger Lesley #1512=>(PR) Turcotte Katrina Rosemary #1512 (PR) Turcotte Katrina Rosemary #1512=>Patel Bhavesh #2120 (PR) Khan Salman Salim #2120=>Sunray Entertainment Group #9019 | 85.43 | |
| 07-13-18 | Adj. Other Retail Sales | Error | -30.00 | |
| 08-07-18 | Visa | XXXXXXXXXXXX7435        11/21 | | 3,250.11 |

| HST Tax Summary: | | Total | 3,250.11 | 3,250.11 |
|---|---|---|---|---|
| *HST # 803355551* | | | | |
| Room : | 292.72 | **Balance** | **0.00** | |
| Other : | 64.78 | | | |
| *HST # 803355551* | | Signature: _____ | | |
| F&B : | 82.87 | | | |
| Total HST : | 440.37 | | | |



## FOUR SEASONS
### HOTEL
#### TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| | |
|---|---|
| Room Number: | 9019 |
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No:    315764
**INVOICE**

Page No:      1 of 4

| Date | Description | Charges | Credits |
|---|---|---|---|
| | (PR) Khan, Salman Salim  Room # | | |
| 07-09-18 | RS Bkft Food | 36.00 | |
| 07-09-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-09-18 | RS Bkft Service Charge | 7.20 | |
| 07-09-18 | RS Bkft HST | 6.40 | |
| 07-09-18 | RS Bkft Food | 34.00 | |
| 07-09-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-09-18 | RS Bkft Service Charge | 6.80 | |
| 07-09-18 | RS Bkft HST | 6.08 | |
| 07-09-18 | Laundry & Dry Cleaning | 75.00 | |
| 07-09-18 | Laundry & Dry Cleaning HST | 9.75 | |
| 07-09-18 | RS Bkft Food | 79.00 | |
| 07-09-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-09-18 | RS Bkft Service Charge | 15.80 | |
| 07-09-18 | RS Bkft HST | 13.10 | |
| 07-09-18 | RS Bkft Food | 142.00 | |
| 07-09-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-09-18 | RS Bkft Service Charge | 28.40 | |
| 07-09-18 | RS Bkft HST | 22.93 | |
| 07-09-18 | RS Bkft Food | 18.00 | |
| 07-09-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-09-18 | RS Bkft Service Charge | 3.60 | |
| 07-09-18 | RS Bkft HST | 3.59 | |
| 07-09-18 | RS Bkft Food | 36.00 | |
| 07-09-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-09-18 | RS Bkft Service Charge | 7.20 | |
| 07-09-18 | RS Bkft HST | 6.40 | |
| 07-09-18 | Room Cleaning Fee | 500.00 | |
| 07-09-18 | Other HST | 65.00 | |
| 07-09-18 | Room Cleaning Fee | 500.00 | |
| 07-09-18 | Other HST | 65.00 | |

60 YORKVILLE AVENUE, TORONTO, ONTARIO M4W 0A4, CANADA
TEL: (416) 964-0411  FAX: (416) 964-2301 www.fourseasons.com



FOUR SEASONS
HOTEL
TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

Room Number: 9019
Arrival Date: 07-06-18
Departure Date: 07-10-18

Folio No: 315764
**INVOICE**

Page No: 2 of 4

| Date | Description | Charges | Credits |
|------|-------------|---------|---------|
| 07-09-18 | Room Cleaning Fee | 500.00 | |
| 07-09-18 | Other HST | 65.00 | |
| 07-09-18 | RS Dinner Food | 93.00 | |
| 07-09-18 | RS Dinner Delivery Chg | 6.00 | |
| 07-09-18 | RS Dinner Service Chg | 18.60 | |
| 07-09-18 | RS Dinner HST | 15..9 | |
| 07-09-18 | RS Dinner Food | 52.u0 | |
| 07-09-18 | RS Dinner Delivery Chg | 6.00 | |
| 07-09-18 | RS Dinner Service Chg | 10.40 | |
| 07-09-18 | RS Dinner HST | 8.89 | |
| 07-09-18 | Laundry & Dry Cleaning | 122.00 | |
| 07-09-18 | Laundry & Dry Cleaning HST | 15.86 | |
| 07-09-18 | RS Dinner Food | 169.00 | |
| 07-09-18 | RS Dinner Delivery Chg | 6.00 | |
| 07-09-18 | RS Dinner Service Chg | 33.80 | |
| 07-09-18 | RS Dinner HST | 27.14 | |
| 07-09-18 | Room Cleaning Fee | 500.00 | |
| 07-09-18 | Other HST | 65.00 | |
| 07-09-18 | RS Dinner Food | 15.00 | |
| 07-09-18 | RS Dinner Delivery Chg | 6.00 | |
| 07-09-18 | RS Dinner Service Chg | 3.00 | |
| 07-09-18 | RS Dinner HST | 3.12 | |
| 07-09-18 | RS Owl Food | 26.00 | |
| 07-09-18 | RS Owl Beer | 36.00 | |
| 07-09-18 | RS Owl Delivery Chg | 6.00 | |
| 07-09-18 | RS Owl Service Chg | 12.40 | |
| 07-09-18 | RS Owl HST | 10.45 | |
| 07-09-18 | Room Charge | 6,000.00 | |
| 07-09-18 | Room Tax (HST) | 780.00 | |
| 07-09-18 | Municipal Accommodation tax (M. | 240.00 | |
| 07-09-18 | MAT HST | 31.20 | |

60 YORKVILLE AVENUE, TORONTO, ONTARIO M4W 0A4, CANADA
TEL: (416) 964-0411 FAX: (416) 964-2301 www.fourseasons.com



## FOUR SEASONS
HOTEL
TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| | |
|---|---|
| Room Number: | 9019 |
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No: 315764
**INVOICE**

Page No: 3 of 4

| Date | Description | Charges | Credits |
|---|---|---|---|
| 07-09-18 | RS Owl Food | 25.00 | |
| 07-09-18 | RS Owl Soda | 70.00 | |
| 07-09-18 | RS Owl Delivery Chg | 6.00 | |
| 07-09-18 | RS Owl Service Chg | 19.00 | |
| 07-09-18 | RS Owl HST | 15.60 | |
| 07-10-18 | RS Bkft Food | 36.00 | |
| 07-10-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-10-18 | RS Bkft Service Charge | 7.20 | |
| 07-10-18 | RS Bkft HST | 6.40 | |
| 07-10-18 | RS Bkft Food | 31.00 | |
| 07-10-18 | RS Bkft Delivery Chg. | 6.00 | |
| 07-10-18 | RS Bkft Service Charge | 6.20 | |
| 07-10-18 | RS Bkft HST | 5.62 | |
| 07-10-18 | Visa | | 10,846.42 |
| 07-10-18 | RS Lunch Food | 134.00 | |
| 07-10-18 | RS Lunch Delivery Chg | 6.00 | |
| 07-10-18 | RS Lunch Service Charge | 26.80 | |
| 07-10-18 | RS Lunch HST | 21.68 | |
| 07-10-18 | RS Lunch Food | 74.00 | |
| 07-10-18 | RS Lunch Delivery Chg | 6.00 | |
| 07-10-18 | RS Lunch Service Charge | 14.80 | |
| 07-10-18 | RS Lunch HST | 12.32 | |
| 07-13-18 | Delivery Charge | 143.00 | |
| | Guest Total | 11,285.02 | 10,846.42 |
| | Sunray Entertainment Group Roon | | |
| 08-07-18 | Visa | 0.00 | 438.60 |
| | Guest Total | 0.00 | 438.60 |



## FOUR SEASONS
#### HOTEL
###### TORONTO

Sunray Entertainment Group
515 Consumers Rd
Suite 701
Toronto ON M2J 4Z2 CA

| | |
|---|---|
| Room Number: | 9019 |
| Arrival Date: | 07-06-18 |
| Departure Date: | 07-10-18 |

Folio No:      315764
**INVOICE**

Page No:      4 of 4

| Date | Description | | Charges | Credits |
|---|---|---|---|---|
| **HST Tax Summary:** | | **Total** | **11,285.02** | **11,285.02** |
| *HST # 803355551* | | | | |
| Room : | 811.20 | **Balance** | **0.00** | |
| Other : | 302.06 | | | |
| *HST # 803355551* | | Signature: _____ | | |
| F&B : | 185.01 | | | |
| Total HST : | 1,298.27 | | | |



AMERICAN
ARBITRATION
ASSOCIATION®

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION®

**"This is not an Invoice"**

# *Financial History*

| History of transactions thru 05-Jul-2023 | | CASE# 01-20-0014-0906 | BALANCE $0.00 |
|---|---|---|---|
| Name | T. Paul Chawla | Sahil Promotions, Inc. | |
| | 3908 North Cass Avenue | Re: Sahil Promotions, Inc. v. Sunray Entertainment, In | |
| | Westmont | | |
| | Illinois 60559 | | |

**Administrative Fees**

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 12794747 | 27-Aug-2020 | Initial Administrative Fee | $1,900.00 |
| 12844108 | 09-Nov-2020 | Proceed Fee | $1,950.00 |
| | | **Subtotal - Administrative Fees** | **$3,850.00** |

**Neutral Compensations and Expenses**

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 12991028 | 14-Jan-2021 | Your Share of the Neutral Compensation Deposit covering the Initial 10 hours of Preliminary Matters | $1,750.00 |
| 13305360 | 09-Dec-2021 | Your Share of Compensation Incurred beyond Deposits Billed | $137.50 |
| 13395855 | 14-Apr-2022 | Your Share of Compensation Incurred beyond Deposits Billed | $735.00 |
| 13417549 | 28-Apr-2022 | Your Share of the Neutral Compensation Deposit covering Additional Study time | $1,500.00 |
| 13435974 | 19-May-2022 | Opposing Party's Share of the Neutral Compensation Deposit | $2,235.00 |
| 13553324 | 10-Oct-2022 | Your Share of Compensation Incurred beyond Deposits Billed | $115.00 |
| 13621265 | 20-Jan-2023 | Your Share of Compensation Incurred beyond Deposits Billed | $735.00 |
| 13621270 | 20-Jan-2023 | Your 100% Share of the Neutral Compensation Deposit covering an Additional 7 hours of Study time | $2,450.00 |
| 13664184 | 21-Mar-2023 | Your Share of Compensation Incurred beyond Deposits Billed | $455.00 |
| 13665807 | 23-Mar-2023 | Your Share of the Neutral Compensation Deposit covering Additional Study time | $2,500.00 |
| | 31-Mar-2023 | Cancellation: Your Share of the Neutral Compensation Deposit covering Additional Study time | -$85.00 |
| | | **Subtotal - Neutral Compensations and Expenses** | **$12,527.50** |
| | | **Net Total of All Charges** | **$16,377.50** |

**Payments**

| Check#/Ref# | Date | Description | Amount |
|---|---|---|---|
| 62689939543 | 23-Nov-2020 | Received From :PATEL BHAVESH | $1,950.00 |
| 64357899129 | 08-May-2023 | Received From :PATEL BHAVESH | $2,870.00 |
| 63694659392 | 04-May-2022 | Received From :Patel Bhavesh | $2,372.50 |
| 62526439153 | 26-Aug-2020 | Received From :Patel Bhavesh | $1,900.00 |
| 64171704443 | 25-Jan-2023 | Received From :Patel Bhavesh | $3,300.00 |
| 63727160388 | 20-May-2022 | Received From :Patel Bhavesh | $2,235.00 |
| 62808448382 | 21-Jan-2021 | Received From :PATEL BHAVESH | $1,750.00 |
| | | **Subtotal - Payments** | **$16,377.50** |
| | | **Net Total of All Payments/Refunds** | **$16,377.50** |
| | | **CASE BALANCE** | **$0.00** |

# Exhibit F



INTERNATIONAL CENTRE | AMERICAN
FOR DISPUTE RESOLUTION | ARBITRATION
ASSOCIATION

# AFFIDAVIT

**In the Matter of Arbitration Between:**

Case Number: 01-20-0014-0906

Sahil Promotions, Inc.

vs.

Sunray Entertainment, Inc.

State of New York      )
                      )   SS:
County of New York   )

Thomas Ventrone being duly sworn deposes and says:

1. He is a Vice President of the International Centre for Dispute Resolution, the International Division of the American Arbitration Association, Inc. (hereinafter referred to as the "ICDR"), a not-for-profit corporation organized under the Laws of the State of New York, having its principal offices at 120 Broadway, 21st Floor, New York, NY 10271.

2. He has reviewed the ICDR's file pertaining to the above-captioned arbitration administered by the ICDR as case no. 012000140906.

3. He hereby certifies that a Final Award was entered in the arbitration on April 1, 2023.

4. The Final Award issued in the above matter reflected a total arbitrator compensation amount billed and paid in the amount of US $14,415.00.

5. The Final Award allocated responsibility for the payment of the above arbitrator compensation amount as incurred, or each party having a payment responsibility of US $7,207.50.

6. In order to allow the arbitration to proceed, the financial records reflect that Sahil Promotions, Inc. remitted US $12,527.50 in compensation payments and Sunray Entertainment, Inc. remitted US $1,887.50 in compensation payments. This resulted in Sahil Promotions, Inc. having paid an additional US $5,320.00, which was the responsibility of Sunray Entertainment, Inc.

7. A true and exact copy of the Financial History, dated December 14, 2023, is attached to this affidavit.

# Exhibit G

Date: March 12, 2024

Thomas Ventrone

State of New York        )
                         )   SS:
County of New York       )

On this 12th day of March, 2024, before me personally came and appeared Thomas Ventrone, to me known and known to me to be the individual described in and who executed the foregoing instrument and he acknowledged to me that he executed the same.

Notary Public

Denise Botta
No. 01B06233327
Notary Public
State of New York
Qualified in Suffolk County
Commission Expires December 27, 20 2 6

2



AMERICAN
ARBITRATION
ASSOCIATION

INTERNATIONAL CENTRE
FOR DISPUTE RESOLUTION

**"This is not an Invoice"**

# *Financial History*

History of transactions thru 14-Dec-2023
Name     T. Paul Chawla
3908 North Cass Avenue
Westmont
Illinois 60559

**CASE#** 01-20-0014-0906     **BALANCE** $0.00
Sahil Promotions, Inc.
Re: Sahil Promotions, Inc. v. Sunray Entertainment, In

## Administrative Fees

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 12794747 | 27-Aug-2020 | Initial Administrative Fee | $1,900.00 |
| 12844108 | 09-Nov-2020 | Proceed Fee | $1,950.00 |
| | | **Subtotal - Administrative Fees** | **$3,850.00** |

## Neutral Compensations and Expenses

| Bill Line # | Date | Description | Amount |
|---|---|---|---|
| 12991028 | 14-Jan-2021 | Your Share of the Neutral Compensation Deposit covering the Initial 10 hours of Preliminary Matters | $1,750.00 |
| 13305360 | 09-Dec-2021 | Your Share of Compensation Incurred beyond Deposits Billed | $137.50 |
| 13395855 | 14-Apr-2022 | Your Share of Compensation Incurred beyond Deposits Billed | $735.00 |
| 13417549 | 28-Apr-2022 | Your Share of the Neutral Compensation Deposit covering Additional Study time | $1,500.00 |
| 13435974 | 19-May-2022 | Opposing Party's Share of the Neutral Compensation Deposit | $2,235.00 |
| 13553324 | 10-Oct-2022 | Your Share of Compensation Incurred beyond Deposits Billed | $115.00 |
| 13621265 | 20-Jan-2023 | Your Share of Compensation Incurred beyond Deposits Billed | $735.00 |
| 13621270 | 20-Jan-2023 | Your 100% Share of the Neutral Compensation Deposit covering an Additional 7 hours of Study time | $2,450.00 |
| 13664184 | 21-Mar-2023 | Your Share of Compensation Incurred beyond Deposits Billed | $455.00 |
| 13665807 | 23-Mar-2023 | Your Share of the Neutral Compensation Deposit covering Additional Study time | $2,500.00 |
| | 31-Mar-2023 | Cancellation: Your Share of the Neutral Compensation Deposit covering Additional Study time | -$85.00 |
| | | **Subtotal - Neutral Compensations and Expenses** | **$12,527.50** |

| | | **Net Total of All Charges** | **$16,377.50** |
|---|---|---|---|

## Payments

| Check#/Ref# | Date | Description | Amount |
|---|---|---|---|
| 62689939543 | 23-Nov-2020 | Received From :PATEL BHAVESH | $1,950.00 |
| 64357899129 | 08-May-2023 | Received From :PATEL BHAVESH | $2,870.00 |
| 63694659392 | 04-May-2022 | Received From :Patel Bhavesh | $2,372.50 |
| 62526439153 | 26-Aug-2020 | Received From :Patel Bhavesh | $1,900.00 |
| 64171704443 | 25-Jan-2023 | Received From :Patel Bhavesh | $3,300.00 |
| 63727160388 | 20-May-2022 | Received From :Patel Bhavesh | $2,235.00 |
| 62808448382 | 21-Jan-2021 | Received From :PATEL BHAVESH | $1,750.00 |
| | | **Subtotal - Payments** | **$16,377.50** |

| | | **Net Total of All Payments/Refunds** | **$16,377.50** |
|---|---|---|---|

| | | **CASE BALANCE** | **$0.00** |
|---|---|---|---|

**TRUE COPY**
INTERNATIONAL CENTRE FOR
DISPUTE RESOLUTION

Page 1 Of 1